RACING GUILD OF OHIO, LOCAL 304, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC, ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* OHIO STATE RACING COMMISSION ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as Racing Guild of Ohio, Local 304 *v.* State Racing Comm. (1986), 28 Ohio St. 3d 317.]

318

(No. 85-1768—Decided December 26, 1986.)

*Schwarzwald, Robiner, Wolf & Rock Co., L.P.A., Melvin S. Schwarzwald* and *David M. Fusco,* for appellees and cross-appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *John C. Albert,* for appellants and cross-appellees.

CLIFFORD F. BROWN, J. The main issue of this cause is whether the clerks have standing to maintain their action based upon their status as any of the following: General Fund taxpayers, contributors to a special fund, or members of the racing industry. We hold that the clerks have standing based upon their status as contributors to a special fund to pursue their action on the merits. Because we find standing based upon this status, we need not address the other standing issues. A threshold issue involves the ability of the common pleas court to obtain subject matter jurisdiction over this cause. We hold that the common pleas court correctly assumed jurisdiction over the subject matter of this action. We turn first to this jurisdictional issue.

The Court of Claims Act, enacted by the General Assembly, effective January 1, 1975, waived sovereign immunity and created a Court of Claims to have exclusive jurisdiction over suits within the contemplation of the Act. "* * * To the extent that the state has previously consented to be sued," however, the Court of Claims Act "has no applicability." R.C. 2743.02(A)(1). Thus, any type of action against the state which the courts entertained prior to the Act may still be maintained outside the Court of Claims.

For purposes of the Court of Claims Act, "state" is broadly defined in R.C. 2743.01(A) as follows:

" 'State' means the state of Ohio, including, but not limited to, the general assembly, the supreme court, *the offices of all elected state officers, and all departments, boards, offices, commissions, agencies,* institutions, and other instrumentalities of the state of Ohio. 'State' does not include political subdivisions." (Emphasis added.)

Thus, to the extent that any actions were permitted against state commissions, boards or agencies in a court of common pleas *prior* to the enact-

ment of R.C. Chapter 2743, those actions may be maintained against the state in a court of common pleas *subsequent* to the enactment of R.C. Chapter 2743. R.C. 2743.02(A)(1).

Declaratory judgment actions were permitted against state agencies prior to the enactment of the Court of Claims Act. See, *e.g., American Life & Accident Ins. Co.* v. *Jones* (1949), 152 Ohio St. 287 [40 O.O. 326]. Thus, there is no question that the exclusive jurisdiction of the Court of Claims does not bar the courts of common pleas from obtaining subject matter jurisdiction over declaratory judgment actions against the state. *Friedman* v. *Johnson* (1985), 18 Ohio St. 3d 85, 87.

The commission contends, however, that injunctive relief may be sought against the state *only* in the Court of Claims. We do not agree.

Ohio jurisprudence is literally riddled with examples of actions for injunctive relief proceeding against state departments, boards, agencies and commissions, all defined as the "state" under R.C. 2743.01(A), prior to the enactment of the Court of Claims Act. Both before [2] and after [3] the enactment of R.C. Chapter 2743, this court entertained actions originating in the courts of common pleas involving injunctive relief against the "state" as it is now defined by R.C. 2743.01(A), without dismissing those actions on that basis.

Given the definition of "state" the General Assembly chose to adopt in R.C. 2743.01(A) and the nature of the parties in the cases cited in footnotes 2 and 3, *supra,* it is clear that an action for injunctive relief may be brought against the state as defined in R.C. 2743.01(A) in a court of common pleas. To the extent this opinion is inconsistent with our opinion in *Brownfield* v. *State* (1980), 63 Ohio St. 2d 282 [17 O.O.3d 181], the *Brownfield* decision is overruled.[4]

---

[2] A non-exclusive list of examples include: *Green* v. *Civil Service Comm.* (1914), 90 Ohio St. 252; *Thornton* v. *Duffy* (1918), 99 Ohio St. 120 (involved injunctive relief sought against the Industrial Commission); *Cincinnati* v. *Hillenbrand* (1921), 103 Ohio St. 286 (action to restrain the Board of Deputy State Supervisors of Elections of Hamilton County); *Coady* v. *Leonard* (1937), 132 Ohio St. 329 [8 O.O. 81] (injunction against the Board of Liquor Control); *State, ex rel. Masterson,* v. *State Racing Comm.* (1954), 162 Ohio St. 366 [55 O.O. 215]; *Hotel Hollenden* v. *Crouch* (1961), 171 Ohio St. 528 [14 O.O.2d 452] (injunctive relief obtained against the Department of Liquor Control); *Davis* v. *Bd. of Edn.* (1968), 13 Ohio St. 2d 24 [42 O.O.2d 29] (injunction against the State Board of Education); *Burger Brewing Co.* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 93 [63 O.O.2d 149] (involved declaratory judgment and injunctive relief against the Liquor Control Commission).

[3] See, *e.g., Bd. of Edn.* v. *Olenick* (1976), 45 Ohio St. 2d 300 [74 O.O.2d 466] (injunction against the Department of Education); *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259 [17 O.O.3d 167] (injunctive relief sought against the Department of Mental Health and Mental Retardation); *Mills-Jennings, Inc.* v. *Dept. of Liquor Control* (1982), 70 Ohio St. 2d 95 [24 O.O.3d 181]; *Mechanical Contractors Assn.* v. *State* (1980), 64 Ohio St. 2d 192 [18 O.O. 3d 407] (injunctive relief against the Director of Transportation).

[4] It may be noted here that our decision today in no way affects the result in *Friedman* v. *Johnson* (1985), 18 Ohio St. 3d 85. The *Friedman* court correctly reiterated that the Court of

Because we find that the court of common pleas may obtain jurisdiction over the subject matter of injunctive actions against the state, we now proceed to the issue of standing.

The essence of the doctrine of standing is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Baker* v. *Carr* (1962), 369 U.S. 186, 204.

As the court of appeals below noted, however:

"The requirement of standing is not designed to shield agencies and officials from accountability to taxpayers; instead, it denies the use of the courts to those who, while not sustaining a legal injury, nevertheless seek to air their grievances concerning the conduct of government. The doctrine of standing directs those persons to other forums."

We turn first to the clerks' standing to proceed with this cause on the merits based upon their status as contributors to a special fund.

The court of appeals found the clerks' status as contributors to a special fund insufficient as a basis for standing to proceed with this action on the merits. We disagree.

Pursuant to R.C. 3769.03, the clerks provide funding for the commission's operation through the contribution of their license fees into the commission's operating account of the state's special revenue fund.

The commission contends that our decision in *State, ex rel. Masterson,* v. *State Racing Comm.* (1954), 162 Ohio St. 366 [55 O.O. 215], does not apply here because *Masterson* is a taxpayer-standing case, while the basis of standing asserted by the clerks involves their status as license-fee payors. Remarkably, however, the commission then demands that we apply language it quotes from the United States Supreme Court's decision in *Flast* v. *Cohen* (1968), 392 U.S. 83, ignoring completely the fact that *Flast,* like *Masterson,* is also a taxpayer-standing case.

More specifically, however, *Masterson* involves the standing doctrine in relation to contributors to a special fund, regardless of whether the contributions are in the form of taxes, fees or other monies. Thus, *Masterson* is relevant to the standing of the clerks to bring this action based upon their status as license-fee payors.

In *Masterson,* this court stated in the first paragraph of the syllabus that: "* * * a taxpayer lacks legal capacity to institute an action to enjoin the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are placed in jeopardy." There is no question that the clerks are contributors to the relevant special fund. Nor is there any question that the allegedly illegal actions of the commis-

---

Claims has exclusive, original jurisdiction over actions involving money damages. See *Boggs* v. *State* (1983), 8 Ohio St. 3d 15, 17. Any reference to *Brownfield* in the *Friedman* opinion was but unnecessary, unfortunate dictum.

sion resulted in insufficient contributions into that same special fund. This alone is enough to satisfy the *Masterson* requirement of a special interest in the relevant fund.

The clerks claim that the partners of a partnership licensed to participate in racing must themselves be licensed as individuals under state law and the commission rules. It is claimed that the allegedly illegal actions by the commission in failing to require the individual partners to have licenses have resulted in an illegal failure of the special fund to receive its license fees due from all persons participating in the racing industry. See R.C. 3769.01; 3769.03; Ohio Adm. Code 3769-12-27.

In times of even slight inflation, administrative costs increase. Thus, the proportion of the commission's costs which are met by the license fees decreases to the extent that the number of licensees does not increase. The only reasonable result of this is an inevitable increase in the amount of the fees paid by each individual or a decrease in services rendered or the effectiveness of the commission's actions. The claimed illegal failure of the commission to require licensing and the payment of license fees of participants in the racing industry into the special fund logically could result in either the need for a fee increase sooner than would be required or necessitate a fee increase of a greater amount or both. Obviously, the clerks have property rights in their own income. Their property rights to whatever portion of their income might go to these increased license fees have been placed in jeopardy by the commission's failure to require the relevant participants in the industry to be licensed and pay license fees. Thus, the *Masterson* test is met by these clerks.

Clearly, where the executive or the legislature lawfully grants administrative agencies discretionary power to make choices among competing alternatives, standing does not lie to challenge these discretionary decisions based solely upon a disagreement with the choice made. The proper remedy for such a disagreement is not judicial, but rather is political; the remedial measures of petitioning the executive or the legislature and the casting of an informed ballot on election day provide a solution to this problem. See, *e.g.*, *Coleman* v. *Miller* (1938), 307 U.S. 433; *United States* v. *Richardson* (1974), 418 U.S. 166; cf. *Baker* v. *Carr* (1962), 369 U.S. 186. Where, however, illegal agency action or agency action in excess of delegated authority is at issue, the judiciary provides the proper forum for the resolution of the dispute.

In the case at bar the clerks have alleged illegal conduct on the part of the commission. While the merits of this assertion are not before this court, the clerks' right to be heard on the merits is before the court. Because the test set forth in *Masterson* is satisfied by these clerks, we reverse the court of appeals' denial of standing based on the clerks' status as contributors to a special fund. Because we find standing to proceed with this action on the merits, no other basis of standing need be addressed.

In light of the foregoing, we hold that injunctive actions may be

brought against the state in courts of common pleas. Thus, we affirm in part and reverse in part the appellate court's determination and hold that the clerks have standing to maintain all five counts of this action on the merits. Therefore, we remand this cause to the court of common pleas for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY and LOCHER, JJ., concur.

HOLMES and DOUGLAS, JJ., concur in judgment only.

WRIGHT, J., concurs in part and dissents in part.

WRIGHT, J., concurring in part and dissenting in part. Although I concur with the first paragraph of the syllabus of the majority decision and the reasoning in support thereof, I must respectfully dissent from that portion of today's holding addressing taxpayer standing.

The majority correctly observes this action was commenced by appellees (three pari-mutuel clerks and their labor union) alleging that the State Racing Commission failed to follow its own rules and the mandate of the General Assembly in issuing a horse-racing permit to Northfield Park, as well as approving its capital improvement application and request for tax abatement. Appellees' complaint sought injunctive relief against the racing commission requiring the revocation of Northfield's operating permit, revocation of the approval of the major capital improvement application, termination of the tax abatement tied to the capital improvement project and a refund of all taxes previously abated.

At trial, the complaint was dismissed for lack of standing. On appeal, appellees argued they possessed standing based upon their status either as general taxpayers, as contributors to a special fund as a result of paying license fees or as participants in the horse-racing industry. Today, the majority holds that as a result of the commission's having failed to require the individual partners of Northfield to secure licenses, appellees have somehow acquired standing to proceed on the entire underlying action. While appellees, as persons who are obligated to purchase licenses, could conceivably challenge the commission's failure to collect license fees from persons who allegedly should have purchased licenses, the acceptance of this position certainly does not confer standing upon appellees to challenge each and every decision of the commission as it relates to the Northfield facility. In reality, appellees' complaint is nothing more than a taxpayer's suit. It must be observed that the majority has elected not to address the sole ground for standing found to exist by the court of appeals—that appellees have standing to pursue their claims as taxpayers.

The seminal case from this court on the issue of taxpayer standing is *State, ex rel. Masterson,* v. *State Racing Comm.* (1954), 162 Ohio St. 366 [55 O.O. 215]. Therein, the following standard was set forth to determine taxpayer standing:

" 'Even in the absence of legislation, a taxpayer has a right to call upon a court of equity to interfere to prevent the consummation of a wrong such as occurs when public officers attempt to make an illegal expenditure of public money, or to create an illegal debt, which he, in common with other property holders of the taxing district, may otherwise be compelled to pay.'

"It is equally fundamental that at common law and apart from statute, a taxpayer can not bring an action to prevent the carrying out of a public contract or the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are put in jeopardy. *In other words, private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally.* 39 Ohio Jurisprudence, 22, Section 12; 52 American Jurisprudence, 3, Section 3." *Id.* at 368. (Emphasis added.)

Without question, *Masterson* requires at the very least that in a taxpayer's suit it must be demonstrated that the party initiating the action has a special interest whereby his own property rights are placed in jeopardy, *and* furthermore, it must be alleged that the taxpayer will sustain damage different in character from that suffered by the general public. It is this portion of *Masterson* which is excised from and ignored by the majority's opinion.

Regarding the allegation that a taxpayer's property rights be placed in jeopardy, it is well-settled that a remote or speculative claim will not suffice. Instead, the interest must be immediate, since courts will not indulge in settling abstract questions of law. *Ohio Contract Carriers Assn., Inc.* v. *Pub. Util. Comm.* (1942), 140 Ohio St. 160 [23 O.O. 369].

The abatement granted by the racing commission is authorized under R.C. 3769.20. The abatement itself is a diminution of tax dollars levied upon racetrack permit holders on the funds collected from those who wager at the tracks. R.C. 3769.08(C). In other words, the source of funds from which the abatement is derived is the daily wagering pool collected from the betting patrons upon which the racetrack permit holder pays a tax, and not monies paid into the General Revenue Fund as taxes by the general taxpayer. Pursuant to R.C. Chapter 3769, the Tax Commissioner is required to use specific amounts of the tax collected for various racing developmental funds. Only the remainder of the tax collected under R.C. 3769.08(C) is paid into the General Revenue Fund in accordance with the provisions of R.C. 3769.10.

A review of appellees' amended complaint demonstrates the failure to allege any damage different to themselves from that which would be sus-

tained by the public in general as a result of the capital improvement project or the tax abatements associated therewith. First, appellees have not shown, as a result of the abatement, that they will have to pay more taxes. Such an argument is, at best, speculative, and will not form the basis for standing. *Ohio Contract Carriers Assn., Inc.* v. *Pub. Util. Comm., supra.* However, assuming, *arguendo,* that appellees' allegation of damage is not speculative, they have nevertheless failed to allege that their damage can be distinguished from the damage that will be sustained by all taxpayers who contribute to the General Revenue Fund. They have, therefore, failed to meet the test of standing imposed under *Masterson.* Cf. *State, ex rel. Skilton,* v. *Miller* (1955), 164 Ohio St. 163 [57 O.O. 145].

The majority reasons that because the clerks have alleged that the racing commission failed to require individual partners of Northfield to have licenses, they have somehow acquired standing to challenge all commission actions with regard to Northfield Park, including the tax abatement and the capital improvement project. In essence, the majority equates the licensing issue with taxpayer standing. Clearly, if the license issue gives the clerks standing to sue, such standing must necessarily be confined to the commission's actions of allegedly failing to require the individual partners of Northfield to secure licenses. To hold otherwise allows appellees to make a claim alleging a licensing error, and then to challenge *any* action of the racing commission pertaining to the Northfield facility. Because this result is not in accordance with fundamental prerequisites for standing, and because of the far-reaching consequences of today's decision, I must dissent.