This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} This case comes upon appeal by Appellant, the University of Akron, which appeals the Summit County Court of Common Pleas' grant of summary judgment to Appellee, John Bee, Ph.D. We reverse.
 I.
{¶ 2} The University of Akron ("UA") previously employed John Bee, Ph.D. ("Dr. Bee"), as a professor and Associate Dean. By early 2000, Dr. Bee had approximately thirty years of service with UA.
{¶ 3} In 1992, UA adopted an Early Retirement Incentive Plan (ERIP) pursuant to R.C. 3307.54.[1] In accordance with the statute, UA afforded several opportunities, or "windows," during which eligible employees could enroll. UA offered the fourth enrollment window in February 1999. UA's Resolution No. 2-13-99, which created the fourth window, provides in pertinent part:
 {¶ 4} "WHEREAS, Ohio law provides that each of its State retirement systems, State Teachers Retirement System (STRS), School Employees Retirement System (SERS), Public Employees Retirement System (PERS) authorizes employers to adopt early retirement incentive plans effecting (sic) employees in each respective system; [therefore]
 {¶ 5} "BE IT RESOLVED that all of those employees submitting `intent' forms to participate in ERIP by the required deadline of January 1, 1999,[2] and who shall meet all other requirements for participation, shall be counted for purposes of determining the initial seniority list of eligible participants within the 5% participation level; and
 {¶ 6} "BE IT FURTHER RESOLVED that in the event the five percent (5%) participation level shall be reached, vacancies which may occur thereafter for any reason whatsoever, including but not limited to the failure of certification of prosecution of the intent, death or other cause, shall be filed (sic) at interval(s) during the ERIP plan window, as determined by the President. Employees shall be notified that any such vacancies exist, and that qualified employees may submit intent forms by a specified date, and that such vacancies shall be filled on the basis of seniority of service as provided by law; and
 {¶ 7} "BE IT FURTHER RESOLVED that in the event the five percent (5%) limitation shall be reached in either STRS, SERS, or PERS(LE), the administration may consider and recommend to the Board of Trustees that additional qualified individuals be allowed to participate in the respective ERIP plan, provided the administration shall have determined that such participation is warranted based on economic considerations and human resource utilization needs."
{¶ 8} UA's Human Resource Department accepted applications to participate in the 5% portion of this enrollment window until January 1, 1999. Dr. Bee did not apply to participate. The 5%, consisting of 117 employees, was attained on January 27, 1999, prior to the amendment.
{¶ 9} On October 18, 1999, UA's Human Resource Department announced the availability of two additional openings under the 5% limit in the fourth window. Dr. Bee applied and then subsequently withdrew his application. The two available openings were filled by the end of January, 2000. Subsequently, other employees were granted participation under the discretionary provision of Resolution No. 2-13-99 that states "that in the event the five percent (5%) limitation shall be reached * * * the administration may consider * * * that additional qualified individuals be allowed to participate * * * based on economic considerations and human resource utilization needs."
{¶ 10} Sometime after he withdrew his request to participate in the 5%, Dr. Bee met with Human Resources at UA. Dr. Bee states that he left the meeting with the belief that UA was considering him for the ERIP under the discretionary provision. UA ultimately refused to allow his participation, stating that it was beneficial to UA that Dr. Bee continue in service as Associate Dean.
{¶ 11} Dr. Bee left his employment at UA on June 30, 2000 and filed suit seeking a declaratory judgment and an injunction. He asked the trial court to declare that he is entitled to participate in UA's ERIP, that he is entitled to receive all benefits due him under the ERIP, and that UA is obligated to purchase retirement credit for him. He also asked the trial court to enjoin UA from administering the ERIP contrary to former R.C. 3307.35 and require UA to enroll Dr. Bee in the ERIP. Both parties filed motions for summary judgment, which was denied to UA and granted to Dr. Bee. This appeal followed. UA raises two assignments of error.
 II. Assignment of Error No. 1 {¶ 12} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF-APPELLEE JOHN BEE, PH.D. BECAUSE IT LACKED JURISDICTION TO DO SO."
{¶ 13} UA argues that the Court of Claims has exclusive jurisdiction to hear this case because UA is a state agency, and although the complaint states a claim in equity, a judgment in Dr. Bee's favor would result in an award of money damages. We disagree.
{¶ 14} The Court of Claims is the sole trial-level adjudicator of claims against the state, unless the claim is solely for declaratory judgment and/or injunctive relief with no claims for money damages attached. R.C. 2743.03. See, also, Racing Guild of Ohio v. Ohio StateRacing Comm. (1986), 28 Ohio St.3d 317, 319-320. Where the claim is for declaratory judgment and/or injunction, the court of common pleas may exercise subject matter jurisdiction. Oakar v. Ohio Dept. of MentalRetardation (1993), 88 Ohio App.3d 332, 336. That a claim in equity will result in monetary benefits does not make the claim one for money damages. See, e.g., Ohio Hospital Assoc. v. Ohio Dept. of Human Serv.
(1991), 62 Ohio St.3d 97, 104-105.
{¶ 15} In the instant case, Dr. Bee is seeking a declaratory judgment and an injunction. He has not asked for money damages, but to prevail would result in retirement funds both expended on his behalf and received directly by him. However, that result does not convert this to a case for money damages. Because this is a plea for declaratory judgment and injunction, jurisdiction is proper in the court of common pleas. UA's first assignment of error is overruled.
 III. Assignment of Error No. 2 {¶ 16} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF-APPELLEE JOHN BEE, PH.D. BECAUSE OHIO LAW ALLOWED DEFENDANT-APPELLANT UNIVERSITY OF AKRON TO ADOPT DISCRETIONARY ENROLLMENT CRITERIA FOR ITS EARLY RETIREMENT INCENTIVE PLAN AND, IN ANY EVENT, DR. BEE DID NOT MEET THE ENROLLMENT CRITERIA."
{¶ 17} UA argues that summary judgment for Dr. Bee was improper because Resolution No. 2-13-99 was a permissible use of discretion in granting the ERIP to employees of UA's choosing after the 5% limit was attained.
{¶ 18} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Pursuant to Civ.R. 56(C), summary judgment is proper if:
 {¶ 19} "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
{¶ 20} R.C. 3307.54, the section which establishes the ERIP, states, in pertinent part:
 {¶ 21} "An employer may establish a retirement incentive plan for its employees who are members of the state teachers retirement system[.]
 {¶ 22} "Participation in the plan shall be available to all eligible employees except that the employer may limit the number of persons for whom it purchases credit in any calendar year to a specified percentage of its employees who, on the first day of January of that year, are members of the state teachers retirement system[.] The percentage shall not be less than five per cent of such employees. If participation is limited, employees with a greater length of service with the employer have the right to elect to have credit purchased before employees with a lesser length of service with the employer."
{¶ 23} UA argues that R.C. 3307.54 should be regarded in pari materia with R.C. 3359.03, which is specific to the University of Akron, and R.C. 3345.31. R.C. 3359.03 authorizes UA's board of trustees to "fix the compensation of" its employees and to "do all things necessary for the * * * successful and continuous operation of the university[.]" R.C. 3345.31 grants general powers to state universities' boards of trustees to "establish compensation plans, including schedules of hourly rates" for their employees. UA argues that all three statutes, construed together, allow UA to institute an ERIP in accordance with R.C. 3307.54 and then to expand the granting of an ERIP under terms its board of trustees deems necessary. Therefore, UA states that Resolution No. 2-13-99 is a permissible use of discretion in granting the ERIP beyond the 5% limit as best meets UA's needs.
{¶ 24} In his motion for summary judgment, Dr. Bee argued that R.C. 3307.54 gives UA only two options: "A plan shall either be open to all eligible employees, or it may be limited to a specified percentage of its employees. These are the only two permissible options for an employer when defining the scope of how many eligible employees may be allowed to participate in the ERIP." (Emphasis sic.) Dr. Bee states that once UA met its 5% self-imposed limit, and then allowed others to participate in the ERIP, UA eliminated the 5% limit and must then make the plan available to all eligible employees.
{¶ 25} The trial court found that because there is no authority "permitting an employer to restrict participation in any manner other than the specified percentage method provided by R.C. [3307.54]," UA's Resolution No. 2-13-99 contravenes R.C. 3307.54. The trial court also found that because Dr. Bee meets the eligibility requirements of R.C.3307.54 and because UA "granted early retirement benefits to other employees in excess of its specified percentage of five percent," UA "improperly denied early retirement benefits to Dr. Bee." The trial court then granted summary judgment to Dr. Bee.
{¶ 26} We agree that UA exceeded the statutory confines of R.C.3307.54. R.C. 3307.54 allows UA to choose between offering the ERIP to all eligible employees or a self-imposed limitation under which seniority is the only consideration. There is no authority for additional employees to be added at UA's discretion once a limit is set and finally reached. Because UA may not offer the ERIP to employees beyond the self-imposed limit of 5%, UA acted improperly to the extent that it allowed other employees to participate once the limit was attained. Because he did not apply to be included in the 5% and that limit has been reached, it would be equally improper to allow Dr. Bee to participate. Therefore, Dr. Bee cannot prove that UA is required to include him in the ERIP, nor can he prove that he is entitled to judgment as a matter of law. Accordingly, UA's assignment of error is sustained to the extent that summary judgment to Dr. Bee was improper.
 III.
{¶ 27} UA's first assignment of error is overruled, its second assignment of error is sustained, and the judgment is reversed and the cause remanded.
SLABY, P.J., WHITMORE, J. CONCUR.
[1] In 1992, current R.C. 3307.54 was codified at R.C. 3307.35.
[2] Resolution 2-13-99 amended a prior resolution which had a January 1, 1999 cut-off date. Resolution 2-13-99 retained that cut-off date, even though the date had already passed.