THE STATE OF OHIO EX REL. DANN *v.* TAFT, GOVERNOR.

[Cite as *State ex rel. Dann v. Taft,*
110 Ohio St.3d 1, 2006-Ohio-2947.]

(No. 2005–1222—Submitted June 7, 2006—Decided June 13, 2006.)

MOYER, C.J.

{¶ 1} Relator, Marc Dann, filed this original action in mandamus seeking a writ ordering respondent, Governor Bob Taft, to disclose certain weekly reports that allegedly relate to the Bureau of Workers' Compensation and that were prepared by various officials in the executive branch. In response to the filing of competing discovery motions, this court recognized a qualified gubernatorial-communications privilege in *State ex rel. Dann v. Taft,* 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472 (*"Dann v. Taft I"*). We issued an order allowing Governor Taft to formally assert that gubernatorial-communications privilege and further authorized Dann to thereafter submit a statement describing "his particularized need to review any weekly reports the governor asserts are privileged."

{¶ 2} Governor Taft timely submitted a sworn affidavit. In the affidavit, he states that he has already provided Dann with hundreds of documents that refer to the Bureau of Workers' Compensation. He acknowledges that portions of those documents had been redacted and that some of the weekly reports prepared by his executive assistants for business and industry authored in 1999 through 2005 had not been provided to Dann as requested, based on the governor's conclusion that the reports contained information unrelated to the bureau. The governor asserts gubernatorial-communications privilege as to the redacted portions and those weekly reports not previously provided to Dann.

{¶ 3} The governor makes the following statements in his affidavit relating to the records for which he claims gubernatorial-communications privilege:

{¶ 4} "I want to make clear that I am not asserting the privilege with respect to any documents requested by Senator Dann that contain information pertaining to the Ohio Bureau of Workers' Compensation ('BWC'). In fact, I have waived any privilege related to the hundreds of documents that have already been provided to Senator Dann. * * *

{¶ 5} " * * *

{¶ 6} " * * * These reports and/or redacted material contain information pertaining to other cabinet agencies or other matters unrelated to the BWC.

{¶ 7} " * * *

{¶ 8} " * * * I personally reviewed these reports each week and relied on them to assist me in identifying issues that raised potential policy concerns, required my direct attention or input, or needed further review by my office. In addition, I used these weekly reports (and those from the other Executive Assistants and cabinet directors) as a tool for structuring my internal staff meetings, which are an important part of the process I use to deliberate on issues, formulate policy and make decisions.

{¶ 9} " * * * Based on my review of the Business and Industry Weekly Reports, I conclude that they all meet the criteria for the gubernatorial-communications privilege because they are communications from the Executive Assistant for Business and Industry that were prepared for the purpose of fostering informed and sound gubernatorial deliberations, policymaking, and decisionmaking. None of the Business and Industry Weekly Reports for which I am now asserting the privilege contain information related to the BWC."

{¶ 10} We conclude that the filing of this affidavit constitutes a formal assertion of gubernatorial-communications privilege according to the framework established in *Dann v. Taft I*.

{¶ 11} Dann thereafter timely submitted an affidavit containing his sworn testimony that he was, during all material times, "an employer who contributed to the Ohio Worker's Compensation Fund." Although not alleged in his complaint in mandamus, he now asserts that his original public-records request was prompted "in part to consider pursuing a taxpayers' action to enjoin illegal contracts or other unauthorized use of public funds and, where appropriate, to recoup the lost funds."

{¶ 12} In a legal memorandum accompanying his affidavit, Dann suggests that Ohio courts have "repeatedly recognized the right of Ohio citizens to file taxpayers' actions to halt illegal government activity or corruption involving misuse of public funds, especially when the taxpayer's suit concerns misuse of general revenue funds." He urges the court to order an in camera review of the records the governor claims to be privileged, suggesting that "[w]ithout the

ability to obtain factual, non deliberative records of the governor's office relating to the use of tax funds, citizens will be severely hindered in exercising this historic right of action which is designed to protect and benefit the public." Dann argues that in some cases, "the only way to know if there is a possible corrupting influence related to a transaction is to access the records reflecting the communications and contacts between private business or political interests and officials, like the governor, involved in such transactions."

{¶ 13} We express no opinion regarding the merits of any potential taxpayer's action that Dann may file. However, we do acknowledge that the common law has long recognized the right of a taxpayer to seek relief from a court of equity to prevent the consummation of a wrong such as an attempt by public officers to make an illegal expenditure of public money or to create an illegal debt, which the taxpayer, together with other property holders of the taxing district, may otherwise be compelled to pay. *State ex rel. Masterson v. Ohio State Racing Comm.* (1954), 162 Ohio St. 366, 368, 55 O.O. 215, 123 N.E.2d 1. See, also, *Racing Guild of Ohio, Local 304 v. Ohio State Racing Comm.* (1986), 28 Ohio St.3d 317, 28 OBR 386, 503 N.E.2d 1025. In the absence of statutory authority, however, a taxpayer lacks legal capacity to institute a taxpayer action unless he has some special interest in the public funds at issue. *Masterson*, supra, paragraph one of the syllabus. Although Dann's "Assertion of Particularized Need" is much broader than his complaint in mandamus, we confine the issues to those raised in the complaint.

{¶ 14} In *Dann v. Taft I,* 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 67, we stated that a requester, "without relying on civil discovery to establish it, must demonstrate particularized, rather than generalized, need and explain why that need outweighs the qualified privilege." Dann thus is unable to use civil discovery to obtain evidence in support of a demonstration of particularized need. Dann has nevertheless asserted that he has, as an employer, personally contributed to the Ohio Worker's Compensation Fund administered by the bureau and is contemplating filing a taxpayer's action to "enjoin illegal contracts or other unauthorized use of public funds,[1] and, where appropriate, to recoup the lost funds."

{¶ 15} In *Dann v. Taft I,* at ¶ 32–49, we drew upon the decisions of a number of federal and state courts in crafting the particularized-need standard to be applied to a request for documents that a governor declares to be privileged. Id. at ¶ 32–49. We intentionally did not provide a list of examples of particularized need, referring specifically only to requests by an authorized legislative committee or a

---

1. The funds that Dann and other employers contribute to the Workers' Compensation Fund are technically not "public funds" as that term is commonly used.

4

grand jury. Those are obvious and widely recognized examples of requesters who have demonstrated a particularized need.

{¶ 16} In this case, the nature of Dann's need is less easily discerned. Here, Dann asserts a need for records for a proposed use that is consistent with long-existing Ohio policy, i.e., the filing of a taxpayer action by a party who has a "special interest" in public funds. *Masterson*, 162 Ohio St. 366, 55 O.O. 215, 123 N.E.2d 1, paragraph one of the syllabus. At least arguably, Dann, as an employer paying into the Worker's Compensation Fund, has a "special interest" in its proper management.

{¶ 17} Implicit in Dann's assertion of particularized need is the premise that the governor continues to hold undisclosed records concerning the BWC. Yet the governor asserts that he is not claiming privilege over those portions of the weekly records concerning the BWC and has already provided to Dann all portions of the requested records relating to the BWC.

{¶ 18} In short, the parties disagree as to the identity and content of the documents Dann seeks. That is, a factual dispute exists between the parties concerning the contents of the records and their relevance to management of the BWC fund. Only this court can resolve that dispute while still preserving the gubernatorial-communications privilege we have established.

{¶ 19} In *Dann v. Taft I*, we stated a general standard of law to be applied to specific circumstances. Much American common-law jurisprudence is developed by applying general standards to defined issues presented in individual cases. This case, which presents an unusual set of facts, is no different.

{¶ 20} Applying the test to the facts shown by relator in his affidavit and having considered the memorandum of his counsel, we conclude that it would be inappropriate at this stage to find that Dann has failed to meet his burden of demonstrating particularized need as described in *Dann v. Taft I*. In camera review will enable the court to verify the identity and contents of the disputed records, which will further enable us to determine whether Dann has met his burden of demonstrating particularized need.[2] Until this determination is made, we need not weigh Dann's asserted need for information against the governor's assertion of executive privilege, that being the third analytical step prescribed in *Dann v. Taft I* for determining the applicability of gubernatorial-communications privilege.

{¶ 21} Accordingly, we order the governor to submit to this court for in camera review the unredacted documents requested by Dann over which the governor

2. We observe that some commentators and even the relator in this case have uttered hyperbolic statements apparently reflecting their prediction of the court's ultimate determination of relator's particularized need even prior to the presentation of facts by relator.

claims qualified gubernatorial-communications privilege. The original and seven copies of the records shall be sealed and filed with the clerk within seven days of the date of this order.

So ordered.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

RESNICK and PFEIFER, JJ., concur in judgment only.

———————

Gittes & Schulte, Frederick M. Gittes, and Kathaleen B. Schulte, for relator.

Jim Petro, Attorney General, and Porter, Wright, Morris & Arthur, Kathleen M. Trafford, Bryan R. Faller, and Anne M. Hughes, for respondent.