JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants, Administrator, Ohio Bureau of Workers' Compensation and the State of Ohio (collectively "the Bureau"), appeal the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I {¶ 2} This case involves workers' compensation permanent total disability (PTD) payments and a class certification issue. Appellee Pietro Cristino ("Cristino") is the lead plaintiff. He took a reduced onetime lump-sum PTD payment of approximately $115,000 in lieu of smaller PTD payments over his lifetime. According to the case and the facts, plaintiffs-appellees, Pietro Cristino, et al. ("appellees"), filed their class action complaint for equitable, declaratory and injunctive relief in the Cuyahoga County Court of Common Pleas on June 22, 2001. Appellees alleged that the Bureau had been misleading PTD recipients in an effort to terminate the continued payment of benefits through lump-sum distributions. Appellees' claim only sought injunctive, equitable and declaratory relief against the Bureau. No monetary damages were requested in the complaint.
 {¶ 3} The Bureau served its answer on July 31, 2001. They later filed a motion to dismiss, and appellees filed their memorandum in opposition on December 20, 2001. The Bureau's motion to dismiss was denied on January 2, 2002. On June 6, 2002, this court released its ruling in Santos v. Administrator,Bureau of Workers' Compensation, Cuyahoga App. No. 80353, 2002-Ohio-2731, in which this court held that an action seeking strictly injunctive and equitable relief was limited to the exclusive jurisdiction of the Ohio Court of Claims. Appellees' counsel advised the trial judge that this ruling required a dismissal of the instant proceedings. An order was, therefore, issued on July 22, 2002 reconsidering and granting the Bureau's motion to dismiss.
 {¶ 4} Appellees then filed a notice of appeal on August 5, 2002. On March 3, 2003, this court issued its opinion affirming the dismissal solely on the basis of the precedent that had been established in Santos. Cristino v. Ohio Bureau of Workers'Comp., Cuyahoga App. No. 80619, 2003-Ohio-766. However, on April 17, 2003, appellees appealed to the Ohio Supreme Court, and this court was overruled. Santos v. Ohio Bureau of Workers' Comp.,101 Ohio St.3d 74, 2004-Ohio-28. Accordingly, this court was reversed, and the case was remanded back to the trial court for further proceedings.
 {¶ 5} On July 23, 2004, the Bureau submitted its motion to dismiss or, alternatively, to transfer based on improper venue, and appellees submitted their memorandum in opposition. The trial court overruled the Bureau's motion on December 17, 2004. Appellees filed a motion for class certification on September 1, 2004, and the Bureau filed its brief in opposition on October 29, 2004. The trial court granted appellees' motion and certified two subclasses in its January 3, 2006 entry. The Bureau appealed on January 3, 2006. The Bureau now appeals the December 6, 2005 entry granting class certification and the December 17, 2004 entry denying defendants' motion to dismiss, or alternatively, to transfer.
 II {¶ 6} Appellees' first assignment of error states the following: "The trial court erred by denying the Bureau's motion to dismiss based on subject matter jurisdiction."
 {¶ 7} Appellees' second assignment of error states the following: "The trial court erred by denying the Bureau's motion to transfer based upon improper venue."
 {¶ 8} Appellees' third assignment of error states the following: "The trial court erred by certifying this case as a class action pursuant to Civ.R. 23 because plaintiffs failed to satisfy all of the prerequisites for certification."
 III {¶ 9} The Bureau argues that the trial court erred by denying the Bureau's motion to dismiss based upon the authority ofSantos v. Ohio Bureau of Workers' Compensation, supra. The Bureau argues that the trial court misapplied the Supreme Court's decision in Santos and ignored Ohio case law regarding the jurisdiction of the Court of Claims. They further argue that appellees "seek money damages, disguised as equitable relief, thus triggering the exclusive jurisdiction of the Court of Claims."[1]
 {¶ 10} We begin our analysis by restating the holding inSantos. In Santos, the Ohio Supreme Court held that a suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity. Thus, a court of common pleas may properly exercise jurisdiction over the matter as provided in R.C. 2743.03(A)(2). See, Santos, 101 Ohio St.3d 74, syllabus.
 {¶ 11} The Supreme Court stated the following in Santos:
"Accordingly, any collection or retention of moneys collected under the statute by the BWC was wrongful. The action seeking restitution by Santos and his fellow class members is not a civil suit for money damages but rather an action to correct the unjust enrichment of the BWC. A suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity. Thus, a court of common pleas may properly exercise jurisdiction over the matter as provided in R.C. 2743.03(A)(2)."
 {¶ 12} Therefore, any wrongful collection or retention of monies by the state is actionable in a common pleas court.
 {¶ 13} An action for injunctive relief may be brought against the state as defined in R.C. 2743.01(A) in a court of common pleas. Racing Guild of Ohio, Local 304 v. Ohio State RacingComm. (1986), 28 Ohio St.3d 317.
 {¶ 14} The main issue or allegation made by appellees in their complaint is that the Bureau mislead hundreds of PTD recipients into accepting lump-sum payments that were worth substantially less than their actual value. Appellees allege that the Bureau led PTD recipients to believe that they would be receiving the actual "present value" of their claim. However, the government's agents failed to disclose that a 30 percent discount had been factored into the discounts, thereby causing PTD recipients to incorrectly believe that the lump sum they were receiving was the mathematical equivalent of the benefits they would have received over their lifetimes.
 {¶ 15} The funds the Bureau "saved" through its actions are still being "retained" by the Bureau. Accordingly, appellees are allowed to seek disgorgement through the principles of equity. The case at bar does not involve one party holding another party liable for damages caused through some tortuous act or omission.
 {¶ 16} The Bureau argues that the trial court should have dismissed the case at bar on the authority of Santos, supra. The Bureau argues that this case is distinguishable from Santos
"because it involves a claim of a wholly different nature, i.e., that the Bureau unfairly failed to pay large enough settlementsto plaintiffs and, therefore, owes additional money to
plaintiffs — a legal claim for money damages."
 {¶ 17} We find that the Bureau's application of Santos
would incorrectly limit R.C. 2743.03(A)(2) to only permit claims seeking awards that can "clearly be traced to particular funds or properly in the defendants' possession."[2] There is nothing in Santos to support the Bureau's interpretation.
"Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies `are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' D. Dobbs, Handbook on the Law of Remedies 135 (1973). Thus, while in many instances an award of money is an award of damages, `[o]ccasionally a money award is also a specie remedy. Id. * * *
"In the present case, Maryland is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that Maryland will suffer or has suffered by virtue of the withholding of those funds. If the program in this case involved in-kind benefits this would be altogether evident. The fact that in the present case it is money rather than in-kind benefits that pass from the federal government to the states (and then, in the form of services, to program beneficiaries) cannot transform the nature of the relief sought — specific relief, not relief in the form of damages. * * * (Citation omitted; emphasis sic.) Bowen, supra,487 U.S. at 895, 108 S.Ct. at 2732-2733, 101 L.Ed.2d at 764-765.
"We find this distinction applicable to this suit. Thereimbursement of monies withheld pursuant to an invalidadministrative rule is equitable relief, not money damages, andis consequently not barred by sovereign immunity."
(Emphasis added.) Ohio Hosp. Assn. v. Ohio Dept. of HumanServices (1991), 62 Ohio St.3d 97, 105.
 {¶ 18} The evidence in the record demonstrates that the trial court did not err in denying the Bureau's motion to dismiss. We find the trial court's actions to be proper.
 {¶ 19} Accordingly, the Bureau's first assignment of error is overruled.
 {¶ 20} The Bureau argues in its second assignment of error that the trial court erred by denying the Bureau's motion to transfer based upon improper venue.
 {¶ 21} However, the Bureau's second assignment of error is not a final appealable order.
 {¶ 22} An order upon a motion granting or denying venue is interlocutory and is not subject to immediate appellate review in Ohio. State ex rel. Allied Chemical Co. v. Aurelius (1984), 16 Ohio App.3d 69; Timson v. Young (1980), 70 Ohio App.2d 239.
 {¶ 23} Accordingly, appellants' second assignment of error is moot.
 {¶ 24} The Bureau argues in its third assignment of error that the lower court erred by certifying this case as a class action pursuant to Civ.R. 23.
 {¶ 25} At the outset, we are mindful that a trial judge is given broad discretion when deciding whether to certify a class action. In re Consolidated Mtge. Satisfaction Cases,97 Ohio St.3d 465, 2002-Ohio-6720, p. 5, citing Marks v. C.P. Chem. Co.,Inc. (1987), 31 Ohio St.3d 200, 31 Ohio B. 398, 509 N.E.2d 1249, syllabus; Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310,312-313, 15 Ohio B. 439, 473 N.E.2d 822. "Absent a showing of abuse of discretion, a trial court's determination as to class certification will not be disturbed." Id.
 {¶ 26} The appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket. Hamilton v. Ohio Savings Bank, 82 Ohio St.3d 67, 70,1998-Ohio-365, 694 N.E.2d 442, citing Marks, supra; In re Nlo, Inc. (C.A.6, 1993), 5 F.3d 154, 157. Nevertheless, the trial court's discretion is not unlimited and must be bound by and exercised within the framework of Civ.R. 23. Thus, "the trial court is required to carefully apply the class action requirements and conduct a vigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." Holznagel v.Charter One Bank (Dec. 14, 2000), Cuyahoga App. No. 76822.
 {¶ 27} Seven requirements must be satisfied before a court may certify a case as a class action pursuant to Civ.R. 23: 1) an identifiable class must exist and the definition of the class must be unambiguous; 2) the named representatives must be members of the class; 3) the class must be so numerous that joinder of all members is impractical; 4) there must be questions of law or fact common to the class; 5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; 6) the representative parties must fairly and adequately protect the interests of the class; and 7) one of the three Civ.R. 23(B) requirements must be met. Civ.R. 23(A) and (B); Warner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91,96-98, 521 N.E.2d 1091.
 {¶ 28} Appellants argue that appellees failed to satisfy all of the prerequisites for class certification. As previously stated, certification in this case involved two separate classes. Class A consists of all "Ohio residents who were not represented by legal counsel at the time that the administrator's agents and/or employees contacted and convinced them to settle their PTD claims for less than their actual present value * * *."[3]
Class B is comprised of those PTD recipients who were represented by legal counsel.[4]
 {¶ 29} "The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."Hamilton, supra, 82 Ohio St.3d at 72, citing 7A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure (2 Ed. 1986), 120-121, Section 1760. Thus, the class definition must be precise enough "to permit identification within a reasonable effort." Warner, supra,36 Ohio St.3d at 96.
 {¶ 30} Identifying the members of Class A and B for purposes of this lawsuit is not onerous. The Bureau can simply reference the records of the PTD beneficiaries who have received lump-sum payments. Determining which of the beneficiaries received less than the actual present values based upon accepted mortality tables is a matter of basic mathematics and time. Accordingly, the class members in the case at bar are identifiable and unambiguously defined.
 {¶ 31} The Bureau argues that Cristino's claims are not typical of the claims of the class. Civ.R. 23(A) provides that "one or more members of a class may sue or be sued as representative parties on behalf of all only if * * * 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class."
 {¶ 32} The requirement of typicality serves the purpose of protecting absent class members and promotes the economy of class action by ensuring that the interests of the named plaintiffs are substantially aligned with those of the class. Baughman v. StateFarm Mut. Auto Ins. Co., 88 Ohio St.3d 480, 2000-Ohio-397,727 N.E.2d 1265, citing 5 Moore's Federal Practice (3 Ed. 1977), 23-92 to 23-93, Section 23.24[1].
 {¶ 33} "Typicality" does not mean, however, that the class representative's claims must be identical to those of all class members. Rather, a representative's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." Baughman,
supra, 88 Ohio St.3d at 485, quoting 1 Newberg on Class Actions (3 Ed. 1992), 3-74 to 3-77, Section 3.13.
 {¶ 34} Here, it is apparent that appellees' claims arise from the same conduct, and are based on the same legal theories, that underlie the claims of other class members. Similar to Cristino's claims, all of the injured workers are seeking disgorgement of funds owed to them through the same equitable principles. They are also requesting a declaration of their rights and an injunction against the continued retention of the funds that should have been paid to them. None of them possess a theory of recovery, or is subject to a defense, that is inapplicable to the others. Accordingly, the class certification requirement of typicality is satisfied.
 {¶ 35} A class representative is considered adequate as long as its interest is not antagonistic to the interest of other class members. Hamilton, supra, 82 Ohio St.3d at 77-78. Cristino's interest is not antagonistic to the interests of the other class members. He possesses a substantial stake in the outcome of the litigation. Similar to the other proposed class members, Cristino's lump-sum PTD payment was discounted by 30 percent.
 {¶ 36} Once it has been ascertained that the threshold requirements of Civ.R. 23(A) have been met, it is necessary to determine if the class action can be maintained under one of the provisions of Civ.R. 23(B).
 {¶ 37} Civ.R. 23(B) provides:
"(B) Class actions maintainable. — An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. * * *"
 {¶ 38} A class action can be maintained only if one of the three situations described in Civ.R. 23(B) exist. We find all three to be present; however, we find Civ.R. 23(B)(2) to be the most applicable to the case at bar. The Bureau has treated each of the class members the same. None of them were provided with a lump-sum distribution of their PTD benefits that approximated their actual present value.
 {¶ 39} The trial court specifically noted in its June 23, 2004 order that discovery was ongoing. Before appellees could obtain all of the necessary discovery information from the Bureau, this interlocutory appeal was filed. Accordingly, appellees were unable to obtain all of the evidence they needed to demonstrate the appropriateness of class certification in this instance.
 {¶ 40} In addition, we find that Civ.R. 23(B)(3) also provides support for certifying a class action in this case. Resolving the numerous class member claims against the Bureau in one single proceeding is far more expedient and efficient than compelling each individual claimant to pursue his or her own individual case. It would be extremely cumbersome and taxing on our court system to follow such an approach.
 {¶ 41} Moreover, the legal standards are the same for each class member with respect to their requests for equitable, injunctive and declaratory relief. The fact patterns are for the most part identical, i.e., Ohio residents, approved for PTD benefits, receiving substantially less than actual present value in a lump-sum distribution. Therefore, the class action certification in the case at bar satisfies both Civ.R. 23(B)(2) and (B)(3).
 {¶ 42} Accordingly, appellants' third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Mary Eileen Kilbane, J., concurs; Ann Dyke, A.J., Concurs in Part and Dissents in Part With Separate Opinion
[1] See Bureau of Workers' Compensation's appellate brief, filed March 10, 2006, p. 5.
[2] See the Bureau's appellant brief, p. 8.
[3] Complaint, 1.
[4] Complaint, 30.