OPINION
{¶ 1} Relator-appellant East Liverpool City School District, ex rel. Gary Bonnell (Bonnell) appeals from the decision of the Columbiana County Common Pleas Court denying his motion for attorney fees and costs in the taxpayer action against respondents-appellees East Liverpool City School District Board of Education (School Board) and Ohio School Facilities Commission (OSFC). Two issues are raised in this appeal. The first issue is whether the trial court erred in denying the motion for fees. The second issue is whether Bonnell's procedural due process rights were violated when the trial court failed to hold a hearing on fees. For the reasons stated below, the judgment of the trial court is hereby affirmed.
 STATEMENT OF CASE {¶ 2} On October 29, 2004, Gary Bonnell initiated a taxpayer suit[1] against East Liverpool City School District Board of Education (School Board), Ohio School Facilities Commission (OSFC) and others, who were subsequently dismissed and are not relevant to this appeal. The taxpayer lawsuit sought an injunction to prevent respondents from going any further with the construction/renovation plan for East Liverpool City Schools.
 {¶ 3} The construction/renovation plan was developed in August 2003. This plan called for renovations and additions to three district elementary buildings, the middle school and the high school. The total estimated project cost was $59,751,022. The State of Ohio was to pay for 87% of the overall cost. The plan size was based on student enrollment projections prepared in 1998 for the OSFC and the School Board by DeJong Associates.
 {¶ 4} In December 2003, the Auditor of the State of Ohio initiated a performance audit of the East Liverpool City School District.[2] The performance audit indicated that the enrollment would decrease in the succeeding 2004-2005 academic year. This was contrary to the DeJong projections which showed that enrollment would consistently increase over the 10 year period of 1998-2008.
 {¶ 5} The Auditor of the State then urged the School Board to develop its own five year enrollment projections. Thus, in April 2004, DeJong did updated enrollment projections. The April 2004 report projected a lower student enrollment number than estimated in the 1998 report. Thus, after reviewing the April 2004 report, the OSFC and the School Board's design professionals prepared four options to reduce the overall size of the building project to be consistent with the reduced enrollment projections.
 {¶ 6} Thereafter, on August 23, 2004, the School Board selected one of those four options. Thus, the overall cost of the project was reduced.
 {¶ 7} In early January 2005, the Ohio Department of Education released its 2005 SF-3 report for the District which showed that more district students than anticipated had enrolled in community schools and neighboring school districts. Accordingly, this enrollment adversely affected the district's current student enrollment. As such, the School Board and OSFC once again asked DeJong to re-examine its student enrollment projections.
 {¶ 8} These projections were presented to the District in February 2005. In March 2005, OSFC created four more options for consideration by the School Board.
 {¶ 9} While this was occurring, Bonnell tried to obtain discovery through depositions and production of documents. Voluminous documents were produced. However, all deponents obtained protection orders. Thus, depositions did not occur. Furthermore, Bonnell requested a temporary restraining order, which was denied by the trial court. On March 30, 2005, Bonnell filed a motion for costs and attorney fees. On April 8, 2005, before any of the merits of Bonnell's claims were addressed, a stipulation of dismissal was filed by Bonnell, the School Board, OSFC, and the remaining respondents. The entry additionally stated that the parties to the stipulation "consent to the retention of jurisdiction by this Court [trial court] for the purpose of rendering a decision on Relator's Motion for Costs and Attorneys Fees * * *." (04/08/05 J.E.) The last paragraph provided the time frame for responding to the motion for fees and costs by stating the following:
 {¶ 10} "Further, the parties hereby agree that Respondents shall have until April, 15, 2005, to serve on Relator, briefs in Opposition to Relator's Motion for Costs and Attorneys Fees, and that Relator shall have until April 27, 2005 to file any rely [sic] to Respondents' Briefs in Opposition."
 {¶ 11} On April 15 and 18, 2005, respectively, OSFC and the School Board responded to Bonnell's motion for fees and costs. On April 28, 2005, Bonnell requested an oral and evidentiary hearing on the motion for fees and costs. Both the OSFC and the School Board opposed the motion.
 {¶ 12} On May 24, 2005, without holding a hearing, the trial court denied both the motion for attorney fees and costs and the motion for an evidentiary hearing. In so holding, it stated the following:
 {¶ 13} "The Court then must address whether or not there exists Ohio legal authority for the Motion for Costs and Attorneys fees. Such is the threshold question that must be found in the Realtor's favor before the Court could logically consider the Relator's April 28 Request for an Oral and Evidentiary Hearing. The Brief of the Board of Education opposing the present Motion persuasively argues as follows:
 {¶ 14} "`Even if the Court were inclined to consider Relator's complaint as a common law taxpayer's action, Relator has failed to set forth any legal theory permitting him to an award of costs and attorneys fees against Respondents. As an initial matter, Relator obtained no judgment against Respondents. In fact, he failed to obtain a single ruling in his favor during the pendency of his two complaints against Respondents. In this regard, Relator (1) withdrew his August 23, 2004 request for a temporary restraining order after a telephonic hearing with the Court; (2) dismissed his first complaint after the Respondents denied liability; (3) had his second request for a temporary restraining order denied after a hearing before the Court; (4) was denied the right to depose certain OSFC officials after the OSFC's motion for protective order was Granted; (5) moved to continue the first trial date rather than test the merits of his claims at that time; (6) moved to stay the case rather than go forward with a second trial date; (7) dismissed the Ohio Department of Education after that respondent filed a motion to dismiss; and (8) dismissed the remaining party respondents after the OSFC filed a motion to dismiss, and the School Board threatened to file a motion to dismiss.
 {¶ 15} "The Relator cannot claim that this suit was effective to do anything based on any judgment obtained. Instead, Relator can only claim benefits which were generated as a result of its very pendency. Realtor cites no authority for a dismissed lawsuit giving rise to the right to reimbursement for fees and costs on behalf of the initiating litigant. Without some authority for the award of fees and costs, the holding of an oral and evidentiary hearing would be pointless." (05/24/05 J.E.).
 {¶ 16} Bonnell timely appeals from that decision. He raises two assignments of error. The second assignment of error will be addressed first since the first assignment of error is somewhat dependent on the outcome of the second assignment of error.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 17} "THE TRIAL COURT ERRED IN DENYING RELATOR'S MOTION FOR ATTORNEY FEES."
 {¶ 18} Attorney fees in a taxpayer action are entirely within the trial court's discretion. State ex rel. Cater v. NorthOlmsted, 69 Ohio St.3d 315, 322, 1994-Ohio-488. Thus, the court of appeals should not reverse the trial court's decision unless it is "plainly wrong." Id. Bonnell argues the trial court abused its discretion in denying attorney fees in his taxpayer action.
 {¶ 19} There exist two types of taxpayer actions — one enumerated in statutory law and one found at common law. Despite OFSC's insistence to the contrary, we find that Bonnell's complaint not only attempted to raise a statutory taxpayer action, but also appears to raise a common law taxpayer action.
 {¶ 20} The statutory taxpayer action was raised under R.C.733.59. Paragraph two and nine of Bonnell's complaint clearly states that the action was brought under R.C. 733.59.
 {¶ 21} Bonnell also did raise a common law taxpayer action. His complaint states that he is a resident and taxpayer of the East Liverpool City School District. This fact creates his special interest in the action which is required to sustain a common law taxpayer cause of action. State ex rel. Shetzer v.Harshaw Chem. Co. (Dec. 18, 1975), 8th Dist. No. 34281.
 {¶ 22} Therefore, the issue to be decided by this court is whether the trial court abused its discretion when it denied fees under his claims of statutory and/or common law taxpayer actions.
 Statutory Taxpayer Action {¶ 23} R.C. 733.59 states:
 {¶ 24} "If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation. Any taxpayer of any municipal corporation in which there is no village solicitor or city director of law may bring such suit on behalf of the municipal corporation. No such suit or proceeding shall be entertained by any court until the taxpayer gives security for the cost of the proceedings."
 {¶ 25} R.C. 733.61 then provides that if a case is heard under R.C. 733.59 and the court determines that the "taxpayer had good cause to believe that his allegations were well founded, or if they are sufficient in law, it shall make such order as the equity of the case demands." If that is the case, the taxpayer is allowed costs, and if a judgment is ordered in his favor, he may be allowed as part of the costs, a reasonable compensation for his attorney. R.C. 733.61.
 {¶ 26} These statues, taken together, indicate three factors that must be met in order for a taxpayer to be entitled to attorney fees under a statutory taxpayer action. R.C. 733.59
establishes the first two factors. The first is that a taxpayer of the "municipal corporation" brings suit on behalf of the "municipal corporation." The second is that a taxpayer must post a bond for the cost of the proceedings. R.C. 733.61 and Ohio Supreme Court case law establishes the third factor. State exrel. White v. Cleveland (1973), 34 Ohio St.2d 37, paragraph three of the syllabus. This factor requires that the action result in a public benefit, which can be either tangible or intangible in character. Id.
 {¶ 27} Under the first factor, the key is whether the East Liverpool City School District is considered a "municipal corporation." Revised Code Chapter 733 does not define "municipal corporation." However, the Ohio Constitution in Article XVIII, Section 1 states:
 {¶ 28} "Municipal Corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from one class to the other shall be regulated by law."
 {¶ 29} Considering this, we cannot find that the East Liverpool City School District is a municipal corporation. A school district is neither a city or a village. Furthermore, inBoard of Edn. of the City of Cincinnati v. Volk (1905),72 Ohio St. 469, the Ohio Supreme Court stated:
 {¶ 30} "Moreover, while boards of education are `bodies politic and corporate,' as declared by statute, yet, like counties, they are but quasi corporations, and differ materially from municipal corporations, as they are organized in this state. School districts are organized to promote education and carry into effect the provisions of section 2 of article 6 of our state Constitution. It says, `The General Assembly shall make such provisions by taxation, or otherwise, as with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state. * * *' Boards of education for these school districts are arms or agencies of the state for the promotion of education throughout the state, while `municipal corporations are called into existence, either at the direct solicitation or by the free consent of the people who compose them.'" Id. at 480-481, citing Hamilton Cty. Bd. ofCommrs. v. Mighel (1857), 7 Ohio St. 109, 118.
 {¶ 31} Thus, considering all the above, we must conclude that a taxpayer action attempted to be pursued under R.C. 733.59
cannot be brought against a school district. As such, Bonnell cannot possibly be entitled to attorney fees under R.C. 733.59
and 733.61.
 {¶ 32} Even assuming arguendo that a school district could qualify as a "municipal corporation" for purposes of R.C. 733.59, Bonnell still would not be entitled to attorney fees under the statute. As stated above, the second factor needed for attorney fees under R.C. 733.59 is the posting of a bond for the cost of the proceedings. The record is devoid of any indication that Bonnell posted the required bond. The Ohio Supreme Court has stated that when a taxpayer fails to post the bond, the action can be received as a common law taxpayer action, but attorney fees cannot be awarded. State ex rel. Citizens for a BetterPortsmouth v. Sydnor (1991), 61 Ohio St.3d 49. Thus, even if we concluded that a school board is a municipal corporation, Bonnell's failure to post a bond destroys his arguable right to attorney fees. He failed to meet the second factor.
 {¶ 33} Similarly, Bonnell cannot establish the third factor — that his action bestowed a public benefit. As aforementioned, the public benefit bestowed does not require it to be monetary in character. Billington v. Cotner (1974), 37 Ohio St.2d 17, 19. It can be intangible in character, such as the prevention of illegal government activity. Id. The key is that the suit must be successful.
 {¶ 34} Bonnell's suit was not successful in the traditional sense of the word. He did not obtain the relief requested. In fact, he dismissed the case prior to obtaining any judgment in his favor. As the trial court correctly points out, Bonnell's request for a temporary restraining order was denied and he was denied the right to depose OSFC officials after the trial court granted OSFC's motion for protective orders. Additionally, Bonnell moved to continue the first trial date, moved to stay the proceedings rather than go forward with a second trial date, dismissed one party respondent after it filed a motion to dismiss and dismissed the remaining party respondents after OSFC filed a motion to dismiss.
 {¶ 35} Furthermore, as the School Board points out, none of the cases cited by Bonnell support his claim that he is entitled to attorney fees. In a number of the cases cited by Bonnell, the taxpayers obtained a judgment against the party they were suing. See Billington, 37 Ohio St.3d 17 (taxpayer was unsuccessful at trial level, but on appeal the decision was reversed. Taxpayer then sought attorney fees which were denied by the trial court. Taxpayer appealed; the court of appeals reversed. City then appealed to the Supreme Court. Supreme Court reversed court of appeals and reinstated trial court's reversal.); Council ofVillage of Bedford v. State ex rel. Thompson, Hine Flory
(1931), 123 Ohio St. 413 (taxpayers obtained judgment on behalf of the village of Bedford against a debtor of the village);Chapman v. Pierson, 4th Dist. No. 02CA27, 2003-Ohio-5274
(taxpayer obtained successful permanent injunction against city and the city agreed with court that it had violated the zoning code); State ex rel. Kuhn v. Smith (Ohio C.P., 1963), 194 N.E.2d 186 (following trial, taxpayers obtained an injunction against the board of education and thereby preserving a common fund of the board). Thus, these cases are factually distinguishable from the case at hand. Since, Bonnell, unlike the cases cited above, never obtained the judgment he was seeking, these cases provide no support for his position.
 {¶ 36} However, as stated earlier, the public benefit does not necessarily need to be a tangible benefit, it can be an intangible benefit. For instance, Bonnell cites to Hess v.Toledo (1999), 133 Ohio App.3d 729, where the taxpayer neither obtained judgment or bestowed a tangible benefit on the public, but was still permitted to recoup attorney fees. In Hess, a taxpayer sought to have an ordinance voided. Before judgment could be obtained, the city council repealed the ordinance. However, this was only done after the trial court had stated that there was a "strong probability" that the ordinance was not enacted properly. Due to the repealing of the ordinance, the trial court dismissed the case as moot. The taxpayer still sought attorney fees. The court of appeals, in reversing the trial court's denial of attorney fees, stated that the city council's act of repealing the statute was equivalent to a final judgment rendered in the taxpayer's favor. Id. Furthermore, it found that the action had bestowed a benefit, though intangible on the community. Id. In coming to this determination, the appellate court relied strongly on the fact that the ordinance was not repealed until after the trial court had indicated that the taxpayer had a strong likelihood of prevailing on the merits of the case. Id. In other words, the appellate court reasoned that the taxpayer action and its strong likelihood of prevailing on the merits, is what caused the city council to repeal the ordinance in question.
 {¶ 37} While the above case is on point for the matter at hand, it does not help Bonnell's cause. In the case sub judice, even if the school board was correctly sued in a statutory taxpayer action, there is nothing in the record to even remotely suggest that Bonnell had a strong likelihood of winning on the merits of the case. None of his motions were ever decided in his favor. He never won anything substantive during the proceedings in the lower court. Furthermore, the record is devoid of any indication that Bonnell's purported taxpayer action caused the School Board to perform extra enrollment reports and modify the construction/renovation plans to conform to the projected lower enrollment numbers. In fact, prior to the filing of the October 29, 2004 complaint, the School Board had already done additional reports and had reorganized the original plan to conform to those reports. Thus, it cannot be concluded that the filing of the October 29, 2004 complaint caused the School Board to do the December 2004 report and later modify the construction/renovation plan to conform with that report.
 {¶ 38} Thus, even if this court could get past the first two factors that are required in order for a taxpayer bringing a statutory taxpayer action to qualify for attorney fees, the third factor would fail. Nothing in the record would support the conclusion that the trial court abused its discretion in determining that Bonnell's suit did not bestow a public benefit.
 {¶ 39} For all the above reasons, Bonnell was not entitled to attorney fees on his claimed statutory taxpayer cause of action.
 Common Law Taxpayer Action {¶ 40} In 1991, the Ohio Supreme Court in Sydnor stated:
 {¶ 41} "We denied this request because R.C. 733.59
unequivocally withholds jurisdiction to bring a statutory taxpayer action unless such security is given. Since it was not given, the instant action was not a proper statutory taxpayer action. Therefore, we allow the writ as a proper common-law taxpayer action for which security is not required, but deny attorney fees pursuant to R.C. 733.61 because all statutory prerequisites for a taxpayer action were not complied with."Sydnor (1991), 61 Ohio St.3d 49 (internal citations omitted).
 {¶ 42} The Eleventh Appellate District has interpreted this to mean that there is no right to attorney fees in a common law taxpayer action. National Elec. Contractors Assn., Inc. v.Mentor (1995), 108 Ohio App.3d 373, 381.
 {¶ 43} "R.C. 733.59 provides that a taxpayer's lawsuit cannot be maintained unless the taxpayer `gives security for the costs of the proceeding.' In interpreting this statute, the Supreme Court of Ohio has held that the security requirement is jurisdictional in nature as to a statutory taxpayer action, and that an award of attorney fees cannot be given when there is a failure by the taxpayer. However, under such circumstances, the suit can still go forward, but only as a common-law taxpayer suit for which security is not required and attorney fees are unavailable. State ex rel. Citizens for a Better Portsmouth v.Sydnor (1991), 61 Ohio St.3d 49." Id.
 {¶ 44} Admittedly, the above two cases deal with a situation where a statutory taxpayer action could have been sought had the appropriate bond been posted. However, this does not alter the courts' insinuation that attorney fees are unavailable in common-law taxpayer suits.
 {¶ 45} The general rule in Ohio is that, absent a statutory provision allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed was found to have acted in bad faith. State ex rel. Kabatek v. Stackhouse (1983),6 Ohio St.3d 55.
 {¶ 46} Similar to the situation at hand, in 1983, the Eighth Appellate District in Levert v. Village of Woodmere (Oct. 6, 1983), 8th Dist. No. 46459, stated that there is no support for the proposition that a common law taxpayer's action is an exception to this general rule. Thus, it concluded that the party bringing the common law taxpayer action did not qualify for attorney fees.
 {¶ 47} Furthermore, despite Bonnell's insistence, the old Ohio Supreme Court cases do not provide support for the proposition that attorney fees in a common law taxpayer action should be granted if the action bestows a public benefit. The cases cited by Bonnell deal with actions and allowances for attorney fees that were mandates by the General Code (statutory law prior to the revised code).
 {¶ 48} Thus, a taxpayer bringing a common law taxpayer action is not entitled to attorney fees. As the Eighth Appellate District found, there is no case law supporting the position that this type of action is an exception to Ohio's general rule on the allowance of attorney fees.
 {¶ 49} However, even if this court concluded that it would be an exception to the general rule and agreed with Bonnell that all he needed to show was that the action bestowed a public benefit, his claim would still fail. As previously explained, given the case law concerning bestowing a public benefit, this court cannot conclude that the action bestowed is a public benefit. See analysis under the third factor of Statutory Taxpayer Action.
 {¶ 50} Consequently, for all the above stated reasons, Bonnell was not entitled to attorney fees under a common law taxpayer action. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 51} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING RELATOR'S REQUEST FOR A HEARING ON HIS MOTION FOR ATTORNEY FEES."
 {¶ 52} After filing his motion for attorney fees, Bonnell filed motions for an oral and evidentiary hearing. Without holding a hearing, the trial court decided the issue of attorney fees. It stated that due to the case law and the lack of authority for Bonnell's position that he had caused some tangible benefit for the taxpayers, a hearing on the issue would be "pointless." (05/24/05 J.E.).
 {¶ 53} We find the trial court's decision was justified. First, there is nothing in the statutes or case law that even remotely suggests that a hearing is required on attorney fees in a taxpayer lawsuit. Second, case law indicates that if the hearing for attorney fees would be pointless, then the trial court does not commit error when it fails to hold the hearing.State ex rel. Freeman v. Wilkinson (1992), 64 Ohio St.3d 516,517-518 (appellate court did not commit error for failing to hold a separate hearing on motion for attorney fees, as was required by R.C. 2323.51, because a separate hearing to make that determination would have been pointless since there was no legal standing for attorney fees); Papadelis v. Makris, 8th Dist. No. 84046, 2004-Ohio-4093 (stating a trial court does not abuse its discretion for failing to hold a hearing on a motion for attorney fees when the court determines, upon consideration of the motion and in its discretion, that the motion lacks merit, especially when it is clear that the court considered the motion for attorney fees); Huddy v. Toledo Oxygen Equipment Co. (May 8, 1992), 6th Dist. No. L-91-328 (even where statute requires hearing before awarding attorney fees, this does not require hearing prior to denying attorney fees). It has been stated that, "[a] court need not, however, waste judicial resources on hearings that are perfunctory, meaningless, or redundant." Novakv. Lee (1991), 74 Ohio App.3d 623. Accordingly, having previously stated that neither statutory or common law attorney fees were warranted, this court finds that the trial court did not abuse its discretion for failing to hold a hearing on the motion for attorney fees. Thus, this assignment of error lacks merit.
 {¶ 54} For the foregoing reasons, the trial court did not abuse its discretion in denying attorney fees and in deciding not to hold a hearing on the motion for attorney fees. Therefore, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.
[1] This was a refilling of a previous lawsuit that was voluntarily dismissed the same day this lawsuit was filed. The previous lawsuit was allegedly filed on July 29, 2004. We do not have the record from the previous lawsuit to verify the similarities between the two. That said, the parties appear to agree that the lawsuits are somewhat similar.
[2] The performance audit was initiated in response to the Ohio Department of Education placing the school district in a state of "fiscal caution," and then down-grading that to a "fiscal emergency." This was done pursuant to R.C. 3316.04.