STATE EX. REL. NORTHERN OHIO CHAPTER OF ASSOCIATED
BUILDERS & CONTRACTORS, INC. et al., Appellants,

v.

BARBERTON CITY SCHOOL DISTRICT BOARD
OF EDUCATION et al., Appellees.

[Cite as *State ex rel. N. Ohio Chapter of Associated Builders
& Contrs., Inc. v. Barberton City School Dist. Bd. of
Edn.*, 188 Ohio App.3d 395, 2010-Ohio-1826.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24898.

Decided April 28, 2010.

396

Alan G. Ross, Nick A. Nykulak, and Ryan T. Neumeyer, for appellants.

Tamzin Kelley O'Neil and Patrick S. Vrobel, for appellees Barberton City School District Board of Education.

Richard Cordray, Attorney General, and William C. Becker, Jon C. Walden, and James E. Rock, Assistant Attorneys General, for appellee Ohio School Facilities Commission.

---

WHITMORE, Judge.

{¶ 1} Plaintiff-appellants, Associated Builders & Contractors, Inc. ("ABC"), Fechko Excavating, Inc. ("Fechko"), Dan Villers, and Jason Antill, appeal from the judgment of the Summit County Court of Common Pleas, dismissing for lack of standing. This court affirms.

I

{¶ 2} In 2008, voters in the city of Barberton passed a 5.2 mill levy to aid the Barberton City School District in building a new middle school. The Barberton Middle School Construction Project ("the project") is estimated to cost approximately $30 million and is scheduled to be completed in several phases. In addition to the use of levy money from Barberton taxpayers, the project is also

being funded by the Ohio School Facilities Commission ("the OSFC"), a state agency created by the Ohio legislature to administer and fund school-construction projects.

{¶ 3} In March 2009, the Barberton City School District Board of Education sought bids for the first phase of the construction, known as the Early Site Work ("ESW"). In its request for proposals, the board specified that all bids were to include prevailing-wage-rate requirements as set forth in R.C. Chapter 4115. Eligible bids were to be submitted to the board by no later than March 25, 2009. Fechko, who is a member of the Northern Ohio Chapter of ABC, timely submitted a bid, incorporating into its bid the required prevailing-wage rates for Summit County. ABC, a national trade association composed of merit shop construction associates and contractors throughout the country, aids its members in addressing issues that are of concern industrywide.

{¶ 4} On or about April 1, 2009, the board awarded the ESW contract to Mr. Excavator. On April 3, 2009, Fechko and ABC (collectively, "bidders"), along with Barberton residents Dan Villers and Jason Antill (collectively, "taxpayers"), filed a verified complaint seeking to permanently enjoin the board and the OSFC from applying Ohio's prevailing-wage requirement to the ESW project. Their complaint also sought a declaration that the bidding requirements and subsequent contracts imposing a prevailing-wage requirement were an abuse of the board's discretion and unlawful. Simultaneously, they filed motions seeking a preliminary injunction, temporary restraining order, and expedited discovery. The trial court held a hearing, at which the magistrate denied the motions for a temporary restraining order and for expedited discovery and set the preliminary injunction and declaratory judgment for hearing on April 15, 2009.

{¶ 5} On April 8, 2009, the board entered into a written contract with Mr. Excavator for completion of the ESW project. On April 13, 2009, the board filed a motion to dismiss the complaint of the bidders and taxpayers under Civ.R. 12(B)(7) based on a failure to join an indispensable party pursuant to Civ.R. 19, namely the OSFC. In response, the bidders and taxpayers filed an amended verified complaint naming the OSFC and Mr. Excavator as defendants, in addition to the board. In May, the magistrate held a pretrial hearing at which he established a discovery schedule and set a trial date for mid-August.

{¶ 6} On May 28, 2009, the board filed a motion to dismiss under Civ.R. 12(B)(1) and (B)(6), arguing that the bidders and taxpayers lacked standing to bring their complaint and that they had failed to state a claim that would entitle them to relief. On that same day, the OSFC also filed a motion to dismiss arguing the same. Mr. Excavator likewise filed a motion to dismiss on June 17, 2009. The bidders and taxpayers opposed the foregoing motions, and the parties proceeded with discovery.

{¶ 7} In early July, the bidders and taxpayers requested leave to file a second amended verified complaint based on information they learned in their discovery depositions. The board, the OSFC, and Mr. Excavator opposed the request for leave, arguing that there were dispositive motions pending before the court and that the second amended verified complaint presented claims that were not yet ripe, as they dealt with future phases of the project for which bids had not yet been requested or bid requirements issued.

{¶ 8} On July 31, 2009, the trial court granted the motions to dismiss filed by the board, the OSFC, and Mr. Excavator. In doing so, it concluded that the bidders and taxpayers lacked standing and had failed to state a claim under Civ.R. 12(B)(6). The trial court also denied the bidders and taxpayers' motion to amend their second verified complaint. The bidders and taxpayers timely appealed and sought a stay of the trial court's decision as well as an injunction. This court denied the motion for stay and request for injunction, and the bidders and taxpayers appealed the denial to the Ohio Supreme Court. In the interim, the board and the OSFC filed a motion to dismiss the appeal as moot, arguing that the ESW project had been completed. The bidders and taxpayers opposed the motion to dismiss, and this court subsequently denied it. On September 21, 2009, the Ohio Supreme Court denied the bidders and taxpayers' motion for stay and request for injunctive relief.

## II

### First Assignment of Error

The trial court erred in dismissing the amended verified complaint and holding that none of the plaintiffs had standing to bring this action under Civ.R. 12(B)(1).

{¶ 9} In their first assignment of error, the bidders and taxpayers argue that the trial court erred in concluding that they lacked standing to pursue the causes of action set forth in their complaint. We disagree.

{¶ 10} "The issue of standing is a threshold test that, once met, permits a court to determine the merits of the questions presented." *Hicks v. Meadows,* 9th Dist. No. 21245, 2003-Ohio-1473, 2003 WL 1524555, at ¶ 7. "A person has standing to sue only if he or she can demonstrate injury in fact, which requires showing that he or she has suffered or will suffer a specific, judicially redressible injury as a result of the challenged action." *Fair Hous. Advocates Assn., Inc. v. Chance,* 9th Dist. No. 07CA0016, 2008-Ohio-2603, 2008 WL 2229530, at ¶ 5. "Lack of standing challenges the capacity of a party to bring an action, not the subject matter jurisdiction of the court." *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002. Accordingly, a motion to dismiss for lack of

standing is properly brought pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. *Brown v. Columbus City Schools Bd. of Edn.*, 10th Dist. No. 08AP–1067, 2009-Ohio-3230, 2009 WL 1911904, at ¶ 4. See also *Kiraly v. Francis A. Bonanno, Inc.* (Oct. 29, 1997), 9th Dist. No. 18250, 1997 WL 775685, at *1. Because standing presents this court with a question of law, we review the matter de novo. *Zagrans v. Elek*, 9th Dist. No. 08CA009472, 2009-Ohio-2942, 2009 WL 1743203, at ¶ 7.

## The Bidders and Taxpayers' Amended Verified Complaint

{¶ 11} In their amended verified complaint, the bidders and taxpayers challenge the use of prevailing wages as a bidding requirement and contractual term for work on the ESW project. Ohio's prevailing-wage law, as set forth in R.C. Chapter 4115, "require[s] contractors and subcontractors for public improvement projects to pay laborers and mechanics the so-called prevailing wage in the locality where the project is to be performed." *Northwestern Ohio Bldg. & Constr. Trades Council v. Ottawa Cty. Improvement Corp.*, 122 Ohio St.3d 283, 2009-Ohio-2957, 910 N.E.2d 1025, at ¶ 14, quoting *J.A. Croson Co. v. J.A. Guy, Inc.* (1998), 81 Ohio St.3d 346, 349, 691 N.E.2d 655. The Ohio Department of Commerce is charged with enforcing the prevailing-wage law. See generally, R.C. 4115.10, 4155.13, and 4115.16. The statute, however, specifically identifies several exceptions to the prevailing-wage law, including "[p]ublic improvements undertaken by, or under contract for, the board of education of any school district." R.C. 4115.04(B)(3). Consequently, school boards are not required to pay prevailing wages when entering into a public-improvement project, such as the construction of a middle school. See R.C. 4115.03(C) (defining "public improvement" to include "all buildings * * * constructed by a public authority" which would include a school board under the definition of "public authority," set forth in R.C. 4115.03(A)).

{¶ 12} In their amended verified complaint, the bidders and taxpayers allege that the "prevailing wage requirement included by the Board in the bid specifications for [the project] that are to be made part of the contract for the [ESW] renders the contract illegal * * * as the Board exceeded its authority under the law resulting in a misappropriation and misuse of public funds." Therefore, they allege that "the Board exceeded its authority under the law resulting in a misappropriation and misuse of public funds" and "entered into an illegal contract and/or exceeded its authority * * * by mandating compliance with Ohio's Prevailing Wage Law on the Project." Additionally, the taxpayers and bidders maintain that "the OSFC does not require, nor can it require, the application of Ohio's Prevailing Wage Law to the Project."

{¶ 13} The trial court concluded that the bidders and taxpayers lacked standing to pursue the aforementioned claims alleged in their complaint. Given that

the bidders and taxpayers arrive at their basis for standing in different manners, we address each party's argument separately.

**Fechko's Standing**

{¶ 14} Fechko alleges that the trial court failed to apply the correct standard of review in deciding the board's, the OSFC's, and Mr. Excavator's motions to dismiss because the trial court did not accept Fechko's factual allegations as true and draw all reasonable inferences in its favor. Fechko points to several excerpts from the trial court's entry to support its claim that the trial court discredited the assertions set forth in its complaint and instead "drew adverse inference against [it]." These arguments, however, have little bearing on Fechko's ability to assert that it has standing in this matter. Consequently, we focus our analysis on Fechko's assertion that, as a bidder on the ESW project, it has standing to challenge the award of the bid and subsequent contract to another contractor, even if the bid award unlawfully incorporates prevailing-wage requirements. Though Fechko provides ample citations to case law that support its assertion that a party must have actually bid on a project in order to have standing to later challenge the bid award, those cases provide only the threshold requirement necessary to challenge the propriety of a bid award. See *Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (concluding that an association lacked standing to pursue a cause of action in a representative capacity to challenge the legality of a bidding procedure because none of its members submitted a bid on the project); *State ex rel. Associated Bldrs. & Contrs., Cent. Ohio Chapter v. Jefferson Cty. Bd. of Commrs.* (1995), 106 Ohio App.3d 176, 182, 665 N.E.2d 723 (concluding that contractors and a contractors' association lacked standing because neither the contractors nor one of the association's members had submitted a bid). That is, while Fechko correctly notes that a bidder must, in fact, submit a bid on a project in order to have standing and allege an actual injury, it incorrectly concludes that if a party submits a bid, it is able to demonstrate actual injury simply by having done so. That is not the case.

{¶ 15} This court has defined "actual injury" in terms of standing as "an invasion of a legally protected interest that is concrete and particularized." *Haley v. Hunter*, 9th Dist. No. 23027, 2006-Ohio-2975, 2006 WL 1627135, at ¶ 12, quoting *Lujan v. Defenders of Wildlife* (1992), 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351. Moreover, in order to have standing, "[a] plaintiff must have a personal stake in the matter; the plaintiff's injury cannot be merely speculative but must be palpable and, also, must be an injury to himself personally or to a class." *Hicks*, 2003-Ohio-1473, 2003 WL 1524555, at ¶ 7, citing *Tiemann v. Univ. of Cincinnati* (1998), 127 Ohio App.3d 312, 325, 712 N.E.2d

1258. An actual injury is one that is "concrete and not simply abstract or suspected." *Ohio Contrs. Assn.*, 71 Ohio St.3d at 320, 643 N.E.2d 1088.

{¶ 16} Fechko argues that it has suffered an actual injury by expending costs to prepare and submit a bid in response to unlawful bidding requirements imposed upon it by the board and the OSFC. Under the authority of *Meccon, Inc. v. Univ. of Akron*, 182 Ohio App.3d 85, 2009-Ohio-1700, 911 N.E.2d 933, Fechko alleges that as "an unsuccessful bidder on a public project, [it is] entitled to recover its bid costs due to unlawful conduct by the governmental authority." In *Meccon Inc.*, however, the University of Akron awarded construction contracts to a bidder in direct contradiction of the express terms of the University of Akron's bidding requirements and corresponding language of R.C. Chapter 4115. *Meccon, Inc.* at ¶ 4 (noting that both the bid documents and the statute governing bidding "prohibit[ed] withdrawal of a bid 'when the result would be the awarding of the contract on another bid of the same bidder,' " which is what occurred when the bidder withdrew its combined bid but was still awarded two stand-alone bids). Thus, Meccon, Inc. was able to demonstrate an actual injury as a result of the bidding process because it was a wrongfully rejected bidder. The Tenth District therefore concluded that the Court of Claims was vested with jurisdiction to hear Meccon Inc.'s claims for bid-preparation costs and attorney fees. Unlike Meccon Inc., however, Fechko was not the wrongfully rejected bidder for the ESW contract. Fechko's complaint alleges that Mr. Excavator's bid was approximately $15,000 less than Fechko's. Thus, Mr. Excavator was properly awarded the ESW contract because it was the lowest responsible bidder.

{¶ 17} Fechko asserts in its complaint that but for having to use prevailing wages in calculating its bid for the ESW project, its bid would have been approximately $10,000 less than Mr. Excavator's. Therefore, Fechko speculates that had there been no requirement for use of prevailing wages, it would have been the lowest bidder, but based on the board's "unlawful" application of R.C. Chapter 4115, it was not. Based on this speculation, we conclude that Fechko's assertion that the prevailing wage requirement caused it any actual injury is abstract and suspect at best. *Ohio Contrs. Assn.*, 71 Ohio St.3d at 320, 643 N.E.2d 1088. Consequently, this assertion cannot serve as the foundation for Fechko's standing.

{¶ 18} Additionally, Fechko argues that it is entitled to recover its bid costs under the authority of *Cementech, Inc. v. Fairlawn*, 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24. There, the Supreme Court left intact the award of bid costs to an unsuccessful bidder on appeal, despite concluding that the bidder was not entitled to lost profits. Again, we note that *Cementech, Inc.*, presents a case factually inapposite to the case at bar, given that the bidder in *Cementech, Inc.*, had submitted the "lowest and best bid [which] by law, [meant

that it] should have been awarded the bid." *Cementech, Inc. v. Fairlawn,* 160 Ohio App.3d 450, 2005-Ohio-1709, 827 N.E.2d 819, at ¶ 15, overruled by *Cementech, Inc. v. Fairlawn,* 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24. Fechko was not the lowest and best bidder, and it is therefore not entitled to recover its bid costs, having been unsuccessful in its attempts to obtain the ESW contract.

{¶ 19} While this court is obligated to accept Fechko's factual allegations as true and make all reasonable inferences in its favor, doing so still fails to support a conclusion that Fechko suffered any actual injury as a result of the board and the OSFC's requirement that bidders use prevailing wages in their bids. Fechko was unable to demonstrate to the trial court or to this court on appeal any instance where a bidder who was not the lowest responsible bidder was able to pursue a cause of action to recover its bid costs. Accordingly, the trial court did not err in finding that Fechko lacked standing in this matter.

## ABC's Standing

{¶ 20} ABC argues that it has associational standing to pursue relief on behalf of one of its trade association members, Fechko. The Ohio Supreme Court has explained:

> [A]n association has standing on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." However, to have standing, the association must establish that its members have suffered actual injury.

*Ohio Contrs. Assn.,* 71 Ohio St.3d at 320, 643 N.E.2d 1088. Based on our determination that Fechko lacked standing to bring this action based on the absence of any actual injury, we necessarily conclude that ABC lacked standing as well. Accordingly, the trial court did not err in dismissing its complaint.

## Taxpayers' Standing

{¶ 21} The taxpayers argue that as residents and taxpayers of Barberton who have paid into a "special fund" by way of the bond levy that is financing the project, they have standing to pursue this action because they have an interest that differs from other taxpayers in Ohio. They rely on the seminal case for taxpayer standing, *State ex rel. Masterson v. Ohio State Racing Comm.* (1954), 162 Ohio St. 366, 55 O.O. 215, 123 N.E.2d 1, in support of this proposition. In that case, Masterson sought to challenge the expenditure of revenues collected by the Ohio State Racing Commission. The revenues were not general taxpayer moneys, but were revenues generated from taxes and fees paid into the "state racing commission fund." *Masterson,* 162 Ohio St. at 369, 55 O.O. 215, 123

N.E.2d 1. Because Masterson did not contribute to this special fund and the Ohio State Racing Commission did not spend general taxpayer money, the Supreme Court reasoned that Masterson lacked standing to sue. The Supreme Court held that "[i]n the absence of statutory authority, a taxpayer lacks legal capacity to institute an action to enjoin the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are placed in jeopardy." Id. at paragraph one of the syllabus. The high court explained that a person's "property rights are * * * in jeopardy" when the person can "allege and prove damage to themselves different in character from that sustained by the public generally." Id. at 368, 55 O.O. 215, 123 N.E.2d 1. Like Masterson, the taxpayers in this case cannot allege that as a result of the board's and the OSFC's actions, they have sustained any damages different in kind from those sustained by any other taxpayer in Barberton whose property taxes are burdened by the 2008 levy.

{¶ 22} We similarly reject the taxpayers' attempts to argue that this is a case in which damages or injury should be presumed. The only instance in which a court chose to do so was where a contract was awarded to a bidder in violation of the statutory requirements that the "award * * * be made to the lowest bidder." State ex rel. Connors v. Ohio Dept. of Transp. (1982), 8 Ohio App.3d 44, 47, 8 OBR 47, 455 N.E.2d 1331, quoting 74 Am.Jur.2d 190, Taxpayers' Actions, Section 4. The taxpayers in this case fall outside of the rubric where damages could be presumed. As we have previously indicated, the contract awarded to Mr. Excavator was not awarded in violation of any statutory requirements, because Mr. Excavator was the lowest responsible bidder on the ESW project and was rightfully awarded the ESW contract.

{¶ 23} The taxpayers gain no additional support for their assertion of standing based on the principles espoused by the Supreme Court in Racing Guild of Ohio, Local 304, Serv. Emps. Internatl. Union, AFL–CIO, CLC v. Ohio State Racing Comm. (1986), 28 Ohio St.3d 317, 28 OBR 386, 503 N.E.2d 1025. In Racing Guild, several racetrack clerks sued the Ohio State Racing Commission, seeking injunctive relief on multiple grounds. The clerks asserted that they had standing on three different bases: as general taxpayers, as contributors to a special fund, and as members of the racing industry. The court determined that the clerks had standing based on their "status as contributors to a special fund" and therefore "no other basis of standing need be addressed." Racing Guild, 28 Ohio St.3d at 322, 28 OBR 386, 503 N.E.2d 1025. Consequently, Racing Guild controls only in cases in which the plaintiffs have contributed to a special fund, which is not the case here. Accord State ex rel. Dann v. Taft (2006), 110 Ohio St.3d 252, 2006-Ohio-3677, 853 N.E.2d 263, at ¶ 10 (noting that "Dann arguably has a 'special interest' in the management of the Workers' Compensation Fund because he had paid into that fund as an employer"); Gildner v. Accenture,

*L.L.P.*, 10th Dist. No. 09AP–167, 2009-Ohio-5335, 2009 WL 3206733, at ¶ 18 (noting that the *Dann* court recognized his standing on the basis of his contribution to a special fund but not on the basis that he was a general taxpayer); *Brown v. Columbus City Schools Bd. of Edn.*, 10th Dist. No. 08AP–1067, 2009-Ohio-3230, 2009 WL 1911904, at ¶ 13 (explaining that plaintiffs "merely contributed to the school district's funding as other citizens in the district generally contributed, as opposed to contributing to some special fund" and therefore lacked standing).

{¶ 24} The taxpayers ask this court to align itself with the Seventh District's decision in *E. Liverpool City School Dist. ex rel. Bonnell v. E. Liverpool City School Dist. Bd. of Edn.*, 7th Dist. No. 05 CO 32, 2006-Ohio-3482, 2006 WL 1851717, where the court indicated that a taxpayer had standing to enjoin a school board from further construction and renovation of schools. We note, however, that the only matter before the Seventh District in that case was the propriety of attorney fees, so there was no analysis of taxpayer standing undertaken by the court in that matter. Id. at ¶ 17–54. Additionally, the underlying case that formed the basis for the appeal in *Bonnell* was resolved by a stipulated dismissal, and based on the trial court's summary of the proceedings, it is unclear whether the issue of standing was ever fully addressed by the trial court. Id. at ¶ 14 (recounting the trial court's entry in which it denied Bonnell's request for attorney fees and noted, "Even if the Court were inclined to consider [Bonnell's] complaint as a common law taxpayer's action * * * [Bonnell] obtained no judgment against Respondents. In fact, he failed to obtain a single ruling in his favor during the pendency of his two complaints"). Therefore, we are not persuaded that Bonnell's taxpayer standing was ever scrutinized in that case. Instead, we are persuaded by the thorough analysis and sound reasoning of the Tenth and Twelfth Districts, which have held that a taxpayer who pays into a general revenue fund lacks standing to challenge the expenditure of those funds, unless he can satisfy *Masterson*'s requirement of proving damages that were different in kind. *Gildner*, 2009-Ohio-5335, 2009 WL 3206733, at ¶ 8–25; *Ohio Concrete Constr. Assn. v. Ohio Dept. of Transp.*, 10th Dist. No. 08AP–905, 2009-Ohio-2400, 2009 WL 1444118, at ¶ 19–25; *Brown*, 2009-Ohio-3230, 2009 WL 1911904, at ¶ 6–15; *Brinkman v. Miami Univ.*, 12th Dist. No. CA2006–12–313, 2007-Ohio-4372, 2007 WL 2410390, at ¶ 30–48.

{¶ 25} Based on the foregoing analysis, we conclude that the trial court did not err in concluding that the bidders and taxpayers lacked standing to pursue their complaint. Accordingly, their first assignment of error is overruled.

## Second Assignment of Error

The trial court erred in holding that plaintiffs failed to state a claim upon which relief can be granted under Civ.R. 12(B)(6) when plaintiffs alleged that

defendants abused their discretion and exceeded their authority under the law by mandating bidders comply with Chapter 4115 on a school construction project.

{¶ 26} In their second assignment of error, the bidders and taxpayers argue that the trial court erred in dismissing their complaint for their failure to state a claim. Because we have already determined that the bidders and taxpayers lacked standing in this matter, this assignment of error is moot, and we decline to address it. App.R. 12(A)(1)(c).

Third Assignment of Error

The trial court erred in denying plaintiffs leave to file a second amended complaint following the disovery [sic] of new evidence.

{¶ 27} In their third assignment of error, the bidders and taxpayers argue that the trial court erred in denying their motion for leave to file a second amended verified complaint. We disagree.

{¶ 28} The decision to grant or deny a motion for leave to amend a pleading is within the discretion of the trial court. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 6, 12 OBR 1, 465 N.E.2d 377. "[T]he language of Civ.R. 15(A) favors a liberal amendment policy and a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party." Id. However, "[w]here a plaintiff fails to make a *prima facie* showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 573 N.E.2d 622, at syllabus. This court has held that " '[a]n attempt to amend a complaint following the filing of a motion [to dismiss] raises the spectre of prejudice.' " *Brown v. FirstEnergy Corp.*, 159 Ohio App.3d 696, 2005-Ohio-712, 825 N.E.2d 206, at ¶ 6, quoting *Johnson v. Norman Malone & Assoc., Inc.* (Dec. 20, 1989), 9th Dist. No. 14142, 1989 WL 154763, at *5. A party is not " 'permitted to sit by for this period and bolster up their pleadings in answer to a motion [to dismiss].' " Id., quoting *Eisenmann v. Gould–Natl. Batteries, Inc.* (E.D.Pa.1958), 169 F.Supp. 862, 864. Consequently, we will not reverse such a decision unless the trial court has abused its discretion. See *Hoover*, 12 Ohio St.3d at 6, 12 OBR 1, 465 N.E.2d 377. An abuse of discretion is more than an error of law or judgment; a finding of abuse of discretion is a finding that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Under this standard, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 29} The bidders and taxpayers argue that they discovered new facts in the course of discovery of which they were unaware at the time they filed, and later amended, their complaint. Specifically, they allege that during the discovery depositions of several board members they learned that (1) the board intended to require compliance with R.C. Chapter 4115 for every phase of the project and (2) the board's purpose for requiring compliance with R.C. Chapter 4115 was based on discriminatory and unlawful motives, given that board members had articulated a desire to ensure that Mexicans were not employed to work on the project.

{¶ 30} The bidders and taxpayers filed their complaint for injunctive relief and declaratory judgment on April 3, 2009. Following the board's first motion to dismiss, the bidders and taxpayers amended their complaint on April 24, 2009, to include the OSFC and Mr. Excavator as defendants. Thereafter, the trial court set August 10, 2009, as the trial date on the matter. Both the board and the OSFC filed motions to dismiss on May 28, 2009, and Mr. Excavator's motion was filed on June 17, 2009. It was not until July 6, 2009, that the bidders and taxpayers requested leave to file a second amended complaint in the matter, asserting new claims as to future requests for bids on subsequent phases of the project.

{¶ 31} The bidders and taxpayers reflect in their appellate brief that they objected to the trial court's scheduling decision by noting that it resulted in an "extraordinary three-month delay" for a decision in this matter. They now complain, however, that the trial court erred by denying their request to amend their complaint, filed nearly two months later, which by their own description would have resulted in "additional claims [based on] newly discovered facts." Moreover, the bidders and taxpayers' request for leave to amend was untimely, as it was filed less than a month from the trial date, while dispositive motions were pending. See, e.g., *Trustees of Ohio Carpenters' Pension Fund v. United States Bank Natl. Assn.*, 8th Dist. No. 93295, 2010-Ohio-911, 2010 WL 877519, at ¶ 25 (affirming the trial court's denial of a motion to amend following the deposition of witnesses, the filing of dispositive motions, and a trial date seven weeks out). The request for leave to amend was also prejudicial, in that it altered the nature of the case by incorporating a request for relief on portions of the project not yet put out for bid and alleged, for the first time, discriminatory conduct on the part of the board. Id. See also *Marx v. Ohio State Univ. College of Dentistry* (Feb. 27, 1996), 10th Dist. No. 95APE07–872, 1996 WL 87462, at *4 (concluding that plaintiff's request for leave to amend was properly denied because it sought to alter the initial request for injunctive relief by adding claims, as opposed to merely correcting an oversight or omission contained in the original complaint). Furthermore, having failed to identify any basis upon which the provision exempting school boards from use of the prevailing-wage law somehow

constitutes a prohibition of their use of law, bidders and taxpayers are unable to make " 'at least a *prima facie* showing [that they] can marshal support for the new matters sought to be pleaded.' " *Wilmington Steel Prods., Inc.*, 60 Ohio St.3d at 122, 573 N.E.2d 622, quoting *Solowitch v. Bennett* (1982), 8 Ohio App.3d 115, 117, 8 OBR 169, 456 N.E.2d 562. Accordingly, the bidders and taxpayers' argument that the trial court erred by denying them leave to amend lacks merit and is overruled.

## III

{¶ 32} The bidders and taxpayers' first and third assignments of error are overruled. The bidders and taxpayers' second assignment of error is moot. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

MOORE, J., concurs.

DICKINSON, J., concurs in judgment only.

DICKINSON, Judge, concurring in judgment only.

{¶ 33} I agree with the majority's judgment and most of its opinion. I write separately to note my enlistment in Judge Fain's war on "the most unfortunate formulation * * * to appear in Ohio appellate jurisprudence: 'The term "abuse of discretion" connotes more than an error of law or of judgment.' " *EnQuip Technologies Group, Inc. v. Tycon Technoglass, S.R.L.*, 2nd Dist. Nos. 2009 CA 42 and 2009 CA 47, 2010-Ohio-28, 2010 WL 53151, at ¶ 123–124 (Fain, J., concurring). The majority's talismanic repetition of this nonsensical phrase in ¶ 28 of its opinion adds nothing to the resolution of this appeal.