[Cite as *Rider-Durst v. Conotton Valley Union Local School Dist. Bd. of Edn.*, 2021-Ohio-3587.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
CARROLL COUNTY

JEFFREY RIDER-DURST, et al.,

Plaintiffs-Appellants,

v.

CONOTTON VALLEY UNION LOCAL SCHOOL DISTRICT BOARD OF
EDUCATION,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 CA 0942**

---

Civil Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2020CVH29594

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Ronald G. Macala*, and *Atty. Jeffrey R. Bruno*, Macala & Piatt, LLC, 601 S. Main St., North Canton, Ohio 44720, for Plaintiffs-Appellants

*Atty. Nelson M. Reid*, *Atty. Tarik M. Kershah*, and *Atty. Samuel Lewis*, Bricker & Eckler, LLP, 100 S. Third St., Columbus, Ohio 43215, for Defendant-Appellee.

Dated: September 30, 2021

_____

**WAITE, J.**

{¶1} Appellants Jeffrey Rider-Durst, Ronald Cappillo, Jason Baker, and Christopher Stephens (collectively referred to as "Appellants") appeal a July 16, 2020 decision of the Carroll County Court of Common Pleas to grant a Civ.R. 12 (B)(6) motion to dismiss their complaint filed against Appellee Conotton Valley Union Local School District Board of Education. Appellants argue that the trial court erroneously determined that they lacked standing as taxpayers to file the lawsuit. For the reasons provided, the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} On June 6, 2020, Appellee awarded a construction contract to Pleasant Hill Construction Ltd. ("Pleasant Hill") for demolition of an existing press box and the construction of a new press box at the school's football stadium. The base price of the contract was $142,000 with an additional $1,000 for change orders, if needed. Details surrounding the selection of Pleasant Hill as the contractor are unclear, but Appellee contends that it received several bids for this work and Pleasant Hill was the low bidder. However, Appellee concedes that it did not conduct public bidding on the contract.

{¶3} It appears that Pleasant Hill immediately began demolition of the old press box after signing the contract. Although the details are somewhat unclear, the demolition work had already begun when Appellants discovered on July 2, 2020 that the project had been approved. The day after learning of the project, Appellants' counsel sent Appellees

Case No. 20 CA 0942

a cease and desist letter. In that correspondence, Appellants also notified Appellee that it intended to seek an injunction to stop the construction. Appellants also sent Appellee a public records request which was fulfilled a week later. At this point, the demolition had been completed and the construction on the new press box had begun.

{¶4} On July 10, 2020, Appellants filed a complaint seeking a declaratory judgment, a temporary restraining order, and other injunctive relief. On July 15, 2020, the trial court held a hearing off the record. Details surrounding this hearing are lacking, however, it appears that the trial court judge and both parties were in attendance. As the hearing was held off of the record, no transcripts exist. Neither party has submitted a substitute for hearing transcripts pursuant to App.R.9(C), (D).

{¶5} On July 16, 2020, the trial court dismissed the complaint based on a lack of standing. On August 11, 2020, Appellants filed a notice of appeal but did not seek a stay. It is unclear whether construction on the new press box was halted at any point during the proceedings. However, according to Appellee, Pleasant Hill completed construction and a final walk through took place on August 28, 2020. Appellee tendered final payment to Pleasant Hill on September 3, 2020.

{¶6} On September 11, 2020, Appellee filed a motion to dismiss the appeal as moot because the project had been completed and final payment had been tendered. We denied the motion because the trial court had not ruled on the merits of the case, so a stay was unavailable to Appellants. In addition, we found that the matter was capable of evading review, thus was not barred by the mootness doctrine.

<u>ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED IN DISMISSING PLAINTIFFS-APPELLANTS' COMPLAINT ON THE GROUNDS THAT PLAINTIFFS-APPELLANTS LACKED STANDING AS TAXPAYERS OF THE CONOTTON VALLEY UNION LOCAL SCHOOL DISTRICT TO PETITION THE COURT FOR INJUNCTIVE RELIEF ENJOINING THE IMPLEMENTATION OF A CONSTRUCTION CONTRACT AWARDED BY THE BOARD OF EDUCATION IN VIOLATION OF R.C. 3313.46.

{¶7} As a threshold issue, Appellants' complaint does not allege any claim for which relief can be granted at this point. Appellants' complaint sought a restraining order, preliminary injunction, and declaratory judgment. However, the complaint does not follow the typical format. It begins with a recitation of the requisite procedural statements and a description of the relevant facts. The complaint then immediately proceeds to the demand for relief. Although the three claims are not addressed within the typical subsections, the grounds for each count of the complaint can be gleaned in reading the complaint as a whole.

{¶8} Because the construction had been completed and payment had been remitted, a restraining order and preliminary injunction are no longer possible remedies. This leaves declaratory judgment as the only possible remedy. However, the declaratory judgment request sought a ruling "under R.C. § 2721 holding that the contract between the Board and Pleasant Hill Construction and/or any entity or person to perform demolition and/or construction services on the District's football field press box absent competitive public bidding is void as a matter of law." (Complaint, p. 5.) Further, Appellants demanded that Pleasant Hill return all funds received under the contract.

Case No. 20 CA 0942

{¶9} However, as Pleasant Hill had completed the work as agreed and apparently abided by all terms of the contract, the trial court cannot order Pleasant Hill to return the funds. Notably, Pleasant Hill was not named as a party in the complaint. Appellants acknowledged this fact at oral argument. As Pleasant Hill's construction services have been completed and Appellee has tendered final payment, the contract is complete. To void the contract, as Appellants requested, would serve essentially no purpose because Pleasant Hill is legally entitled to payment for its work. The complaint was clearly filed, however, to prevent further situations where the school board may try to engage in a contract without first seeking competitive public bidding. We agree that this limited issue is capable of evading review, thus will proceed to address the parties' arguments.

{¶10} The relevant statute here is R.C. 3313.46:

(A) In addition to any other law governing the bidding for contracts by the board of education of any school district, when any such board determines to build, repair, enlarge, improve, or demolish any school building, the cost of which will exceed fifty thousand dollars, except in cases of urgent necessity, or for the security and protection of school property, and except as otherwise provided in division (D) of section 713.23 and in section 125.04 of the Revised Code, all of the following shall apply:

(1) The board shall cause to be prepared the plans, specifications, and related information as required in divisions (A)(1), (2), and (3) of section 153.01 of the Revised Code unless the board determines that other

information is sufficient to inform any bidders of the board's requirements. *
* *

(2)  The board shall advertise for bids once each week for a period of not less than two consecutive weeks, or as provided in section 7.16 of the Revised Code, in a newspaper of general circulation in the district before the date specified by the board for receiving bids. * * *.

(6) None but the lowest responsible bid shall be accepted.

{¶11}  Appellee concedes that it did not publicly advertise for bids.  Appellee argues that it was not required to comply with the statute because the press box is not a school building.  The term "school building" is not defined within the statute.  The only statutory definition of "school building" is found within a criminal statute, R.C. 2925.01(S). The statute defines a school building as:  "any building in which any of the instruction, extracurricular activities, or training provided by a school is conducted, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted in the school building at the time a criminal offense is committed."

{¶12}  While we do not expressly adopt this definition for purposes of this review, this definition does provide guidance.  While student activities may not occur within the press box, it is located on school grounds and is intertwined with and accessory to the football field where extracurricular activities unquestionably occur.  Had the press box not been a school building, Appellees would not have been authorized to spend public, school funds on its replacement.  Even so, this definition is only relevant if Appellants can demonstrate standing.

Case No. 20 CA 0942

**{¶13}** The general law regarding taxpayer standing has been established by the Ohio Supreme Court in several cases, most notably *State ex rel. Masterson v. Ohio State Racing Comm.,* 162 Ohio St. 366, 123 N.E.2d 1 (1954). The *Masterson* Court announced the standard in a common law taxpayer action:

> [A] taxpayer can not [sic] bring an action to prevent the carrying out of a public contract or the expenditure of public funds unless he had some special interest therein by reason of which his own property rights are put in jeopardy. In other words, private citizens may only restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally.

*Id.* at 368.

**{¶14}** Over the years, Ohio courts have strictly interpreted this law. Appellants rely on dicta from a Seventh District case to argue that residency and mere status as a taxpayer is sufficient to establish standing. See *E. Liverpool City School Dist. ex rel. Bonnell v. E. Liverpool City School Dist. Board of Edn.,* 7th Dist. Columbiana No. 05 CO 32, 2006-Ohio-3482. The *Bonnell* court stated that the appellant "also did raise a common law taxpayer action. His complaint states that he is a resident and taxpayer of the East Liverpool City School District. This fact creates his special interest in the action which is required to sustain a common law taxpayer cause of action." *Id.* at ¶ 21. However, the issue before the *Bonnell* court was not whether the appellant had standing as a taxpayer. Instead, the appeal was limited to the question whether the appellant was entitled to attorney fees after the court dismissed the complaint. The *Bonnell* court held that the

appellant was not entitled to attorney fees because even if the school board was correctly sued in a statutory taxpayer action, "there is nothing in the record to even remotely suggest that Bonnell had a strong likelihood of winning on the merits of the case." *Id.* at ¶ 37. The dicta Appellant relies on was not necessary to or considered in reaching this holding.

**{¶15}** The *Bonnell* quote was addressed by the Ninth District in *State ex rel. N. Ohio Chapter of Associated Builders & Contrs., Inc. v. Barberton City School Bd. of Edn.,* 188 Ohio App.3d 395, 2010-Ohio-1826, 935 N.E.2d 861 (9th Dist.). The Ninth District stated: "the only matter before the Seventh District in that case was the propriety of attorney fees, so there was no analysis of taxpayer standing undertaken by the court in that matter." *Id.* at ¶ 24. While this is true, we recognize that the *Bonnell* quote is contrary to the established caselaw.

**{¶16}** Ohio Courts have found the following arguments did not demonstrate standing to maintain a taxpayer lawsuit: taxpayers who pay into a general revenue fund, taxpayers who purchase gasoline where gasoline sales tax is used as funding, an alleged interest in being protected from the negative effects of an activity such as gambling. See *Barberton, supra; State ex rel. Connors v. Ohio Dept. of Transp.,* 8 Ohio App.3d 44, 47, 455 N.E.2d 1331 (10th Dist.1982); *State ex rel. Walgate v. Kasich,* 147 Ohio St.3d 1, 2016-Ohio-1176, 59 N.E.3d 1240.

**{¶17}** Although Ohio courts following *Masterson* have consistently held that a taxpayer must demonstrate a special interest, the Tenth District announced an exception to this rule. In *Connors,* the court stated:

[I]n some situations such damage or injury may be presumed, as in the sale of bonds for less than their par value, in the award of public contracts in violation of statutory requirements that such award must be made to the lowest bidder, in the execution of public contracts in which a public officer has a personal interest, in the execution of public contracts in violation of mandatory provisions of a statute respecting such contracts, or in the expenditure of funds for an unlawful or unconstitutional purpose.

*Id.* at 47, citing 4 American Jurisprudence 2d 190, Taxpayers' Actions, Section 4.

**{¶18}** In *Connors,* the plaintiffs alleged that the Ohio Department of Transportation violated the statutory mandates requiring the lowest bidder to be selected where a minority set-aside prevented the potentially lowest bidders from bidding on the contract. *Id.* at 45. Because the requirement to accept the lowest eligible bidder was violated, the *Connors* court found that a special injury could be presumed. *Id.* at 47.

**{¶19}** This exception essentially requires the trial court to determine the merits of the case before a determination of whether standing has been established. We note that this exception is not based on Ohio law. It stems from an American Jurisprudence article. Importantly, no other Ohio court has adopted this exception since the *Connors* court in 1980, 41 years ago. The Ninth District acknowledged this in *Barberton* but ultimately held that the bidding process in that case complied with all relevant statutes, thus the *Connors* exception was not applicable. See *Barberton, supra.*

**{¶20}** We look to the Ohio Supreme Court's guidance, which includes *Masterson* and its lineage of cases. It is clear from these cases that in order to successfully establish standing, a taxpayer must establish a special injury. Here, Appellants rely only on their

general status as taxpayers and on the *Connors* exception. Neither of these is sufficient to establish standing pursuant to law. As such, Appellants' assignment of error is without merit and is overruled.

## Conclusion

{¶21} Appellants argue that the trial court erroneously determined that they lacked standing as taxpayers to file the lawsuit. As Appellants have not established standing, the judgment of the trial court is affirmed.

Donofrio, P.J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**

Case No. 20 CA 0942